**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ELIZABETHTOWN GAS COMPANY, a
Division of NUI Corporation,
Petitioner,

No. 99-1687

v.

NATIONAL LABOR RELATIONS BOARD,
Respondent.

NATIONAL LABOR RELATIONS BOARD,
Petitioner,

v.

No. 99-1801

ELIZABETHTOWN GAS COMPANY, a
Division of NUI Corporation,
Respondent.

On Petition for Review and Cross-Application
for Enforcement of an Order of the
National Labor Relations Board.
(22-CA-23113)

Argued: March 2, 2000

Decided: May 16, 2000

Before MOTZ and KING, Circuit Judges, and
Jackson L. KISER, Senior United States District Judge
for the Western District of Virginia, sitting by designation.

_____

Petition for review denied and cross-application for enforcement
granted by published opinion. Judge King wrote the opinion, in which
Judge Motz and Senior Judge Kiser joined.

**COUNSEL**

**ARGUED:** Martin F. Payson, JACKSON, LEWIS, SCHNITZLER & KRUPMAN, Morristown, New Jersey, for Elizabethtown Gas. David A. Seid, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for Board. **ON BRIEF:** Joseph F. Accardo, JACKSON, LEWIS, SCHNITZLER & KRUPMAN, Morristown, New Jersey, for Elizabethtown Gas. Frederick L. Feinstein, General Counsel, Linda Sher, Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, David Haberstreit, Supervisory Attorney, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for Board.

_____

**OPINION**

KING, Circuit Judge:

Elizabethtown Gas Company ("the Gas Company") petitions for review of an order of the National Labor Relations Board ("NLRB") requiring, inter alia, the Gas Company to recognize and bargain with the Communications Workers of America, AFL-CIO ("the Union"). The NLRB brings a cross-application seeking enforcement of its order ("the NLRB Order").

In a close election, the employees of the Gas Company chose the Union as their exclusive collective bargaining representative. Thereafter, the NLRB considered and rejected the Gas Company's objections to the election and certified the Union. However, the Gas Company refused to bargain with the Union, challenging the validity of the NLRB's certification and claiming that the NLRB erred in overruling the Gas Company's objections to the election. Following a complaint from the Union, the NLRB concluded that the Gas Company's refusal to bargain constituted an unfair labor practice in violation of Sections 2(6), 2(7), 8(a)(1) and 8(a)(5) of the National Labor Relations Act ("NLRA"). See 29 U.S.C. §§ 151 et seq. Therefore, the NLRB ordered the Gas Company to recognize and bargain with the Union.

We conclude that the NLRB did not abuse its discretion in rejecting the Gas Company's objections to the election or in certifying the

2

Union. We therefore deny the Gas Company's petition and grant enforcement of the NLRB Order.

I.

The Gas Company operates a public utility supplying natural gas to customers in New Jersey. On September 25, 1997, the Union filed a petition with the NLRB seeking certification as the collective bargaining representative of the Gas Company's service and dispatch employees in Elizabeth, Perth Amboy, and Union, New Jersey. Following the NLRB's rejection of the Gas Company's objections,[1] the NLRB directed that an election by secret ballot be held in which the voters would determine "whether or not they desire to be represented for collective bargaining purposes by Communications Workers of America, AFL-CIO." J.A. 220.

The NLRB conducted the election on November 20, 1997, at the Gas Company's Elizabeth, New Jersey facility. Among the eighty-five unit employees, forty-two voted in favor of the Union and forty voted against the Union, with one challenged ballot and one void ballot. The Gas Company then timely filed twelve objections relating to conduct allegedly affecting the results of the election, citing purported misconduct by the NLRB agent who oversaw the election and by the Union during the election campaign.

On December 5, 1997, an NLRB Regional Director responded to the Gas Company's twelve objections by issuing a Supplemental Decision and Notice of Hearing to gather evidence relating to four of the objections. Pursuant thereto, an NLRB Hearing Officer conducted a one-day hearing on December 16, 1997, during which the parties were permitted to call and cross-examine witnesses.

On December 17, 1997, the Regional Director issued his Second Supplemental Decision on Objections, in which the NLRB rejected the Gas Company's eight objections for which no hearing was required. Thereafter, on January 14, 1998, the Gas Company

_____

[1] The Gas Company contended, inter alia, that the dispatchers were "supervisors" for purposes of the NLRA and therefore could not benefit from the protections of the Act.

requested NLRB review of the Regional Director's Second Supplemental Decision. Subsequently, on January 28, 1998, the NLRB Hearing Officer submitted a report relating to the four remaining objections on which a hearing had been held, concluding that the objections should be overruled. The Gas Company responded on February 10, 1998, by filing exceptions to the NLRB Hearing Officer's report, supported by a brief in support of its exceptions.

On December 3, 1998, the NLRB issued an order rejecting the Gas Company's exceptions to the Regional Director's Second Supplemental Decision and adopting the Hearing Officer's report, thereby overruling each of the Gas Company's objections. This order also included a Certificate of Representation, certifying the Union as the exclusive collective bargaining representative of the employees as of December 3, 1998.

On December 11, 1998, the Union sent the Gas Company a letter seeking to bargain, but the Gas Company refused to negotiate. The Union responded on January 11, 1999, by filing an unfair labor practice charge against the Gas Company, claiming that it had violated the NLRA. The General Counsel of the NLRB then filed an administrative complaint, charging the Gas Company with unfair labor practices, including failing to bargain with a duly certified Union in violation of the NLRA. The Gas Company filed its answer admitting that it had refused to bargain but attacking the validity of the certification on the basis that its (the Gas Company's) objections to the election had been improperly overruled. Following the submission of summary judgment briefs, the NLRB, on April 30, 1999, found for the Union and ordered the Gas Company to: (1) cease and desist violating the NLRA; (2) recognize and bargain with the Union; and (3) if an agreement is reached, "embody the understanding in a signed agreement."

The Gas Company has petitioned in this Court for review of the order of the NLRB, and the NLRB has cross-applied, seeking enforcement of its order. We possess jurisdiction in this case pursuant to 29 U.S.C. § 160(e) & (f).

II.

"The results of a[n NLRB]-supervised representative election are presumptively valid." NLRB v. Flambeau Airmold Corp., 178 F.3d

4

705, 707 (4th Cir. 1999). This presumption reflects Congress's decision to "entrust[ ] the [NLRB] with a wide degree of discretion in establishing the procedure and safeguards necessary to insure the fair and free choice of bargaining representatives by employees." NLRB v. A.J. Tower Co., 329 U.S. 324, 330 (1946). Therefore, we may not substitute our judgment for that of the NLRB, even if we would have made a different decision had the matter been before us de novo. So long as the NLRB's decision is reasonable and based upon substantial evidence in the record considered as a whole, it must be upheld. See § 29 U.S.C. 160(f); Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951).

Where pre-election conduct is alleged to have invalidated a representation election, the party seeking to overturn the election -- in this case the Gas Company -- bears a heavy burden. The challenging party must prove by specific evidence not only that campaign improprieties occurred, but also that they prevented a fair election. NLRB v. Hydrotherm, Inc., 824 F.2d 332, 334 (4th Cir. 1987). Thus, it is not enough that the Gas Company demonstrates an NLRB failure to follow its own policies: "We did not intend that the election be set aside merely on the basis that it was possible that the choice had been corrupted or that there was an opportunity to corrupt the choice." Newport News Shipbuilding & Dry Dock Co. v. NLRB, 608 F.2d 108, 111 (4th Cir. 1979). In other words, we may overturn the NLRB's finding only if the NLRB has "abused its discretion" in certifying the election. Case Farms of North Carolina, Inc. v. NLRB, 128 F.3d 841, 844 (4th Cir. 1997).

Because the Gas Company admits that it has refused to bargain with the Union, the sole issue underlying our review of the NLRB's Order is whether the NLRB abused its discretion in certifying the Union.[2] For the reasons set forth below, we conclude that none of the

_____

[2] In reviewing the Gas Company's contentions, we are reminded of Judge Craven's insightful observations, albeit in a different context: "[I]ngenious and diligent counsel have taken a shotgun approach to the validity [of the proceedings], asserting that reversible error occurred in [numerous] respects. So many points of error suggest that none are valid." United States v. Sawyers, 423 F.2d 1335, 1338 (4th Cir. 1970). Those observations apply with equal force here; nonetheless, we have carefully reviewed the Gas Company's myriad objections to the election.

5

Gas Company's objections, considered individually or in their totality, demonstrate an abuse of discretion by the NLRB. We take the objections in turn, beginning each discussion by reviewing the facts relevant thereto.

A.

The NLRB was represented at the election by NLRB Agent Erica Tener ("Agent Tener"). At a pre-election conference, as Agent Tener was setting up for the election, she observed aloud that the pencils to be used for voting were unsharpened. In response, the Gas Company's director of customer relations offered sharpened pencils with erasers, which were on a shelf in the voting room. Agent Tener declined, claiming that pencils without erasers, like the ones provided in the NLRB election kit, were the only writing implements that could be utilized in NLRB elections. The Gas Company employee then sharpened the eraserless pencils for use in the election.

During the election, Gas Company employee Donna Krapf entered the polling area to cast a ballot. When Ms. Krapf moved into the voting booth and observed that pencils were being used in voting, she asked whether she was required to vote in pencil. Agent Tener replied, "[T]hat's the law." J.A. 323, 150. Ms. Krapf worried aloud that if she voted in pencil, "anybody can go and change [the vote]." J.A. 150. Agent Tener then responded that the absence of erasers sought to avoid this form of tampering, but Ms. Krapf returned the ballot unmarked to Tener and left the polling area.

Ms. Krapf subsequently spoke to her supervisor, who encouraged her to vote. She then returned to the polling area to vote; she received a new ballot but inadvertently marked the incorrect box. Agent Tener took the spoiled ballot and, with Ms. Krapf as a witness, sealed the ballot in an envelope. Krapf was then given a new ballot, which she used and placed in the ballot box. The Gas Company raised two objections relating to these facts, and we discuss them in turn below.

1.

First, the Gas Company alleges that it was error for the Board Agent to require the use of the eraserless pencils that came with the

6

NLRB election kit. Specifically, the Gas Company notes that nothing in the Board rules, regulations, or procedures required the use of eraserless pencils; in fact, the NLRB's publications imply the contrary insofar as the NLRB Casehandling Manual discusses"erasures" in the context of valid ballots. The Gas Company further argues that the lack of erasers disenfranchised voters, as evidenced by Ms. Krapf's reaction when she entered the voting booth along with the reaction of other voters.

Where, in all the circumstances, an NLRB Agent's conduct does not raise a reasonable doubt about the fairness or validity of the election, even actions that are contrary to NLRB policy do not constitute grounds for setting aside the results of the election. See NLRB v. Duriron Co., Inc., 978 F.2d 254, 259 (6th Cir. 1992). In this light, even if we assume that Agent Tener's statement -- that the use of eraserless pencils was required "by law" -- was contrary to NLRB policy, it had no apparent effect on the election. The Gas Company cannot demonstrate that a single voter was disenfranchised by the lack of erasers. Indeed, the lone employee voter who expressed concern was worried about the use of pencils, not by the absence of erasers, and even that voter ultimately submitted a ballot. Under these circumstances, we see no reason to overturn this election for lack of erasers on the pencils.

2.

Second, the Gas Company argues that one of the ballots handled by Ms. Krapf has been misplaced and that this mandates overturning the election. That is, the Gas Company claims that when Ms. Krapf went into the voting booth the first time and decided not to vote, she returned her ballot to Agent Tener. The Gas Company further asserts that the NLRB cannot account for this ballot and that the two observers have given conflicting accounts of what was done with it, with the Gas Company observer testifying that Agent Tener sealed this first ballot in an envelope and the Union observer testifying that Agent Tener returned the unmarked ballot to the blank ballot pile. Based on these assertions, the Gas Company claims that: (1) Agent Tener should have been required to testify during the administrative hearing in order to resolve the factual disputes; and (2) the election should be overturned.

With respect to Agent Tener's testimony at the administrative hearing, NLRB agents are cloaked with a limited evidentiary privilege. "[T]he highly sensitive and delicate role of the Board Agent in processing and resolving unfair labor practice and representation cases would be seriously impaired if a real likelihood existed of the Board Agent's becoming enmeshed as a witness in cases to which he has been assigned." Drukker Communications, Inc. v. NLRB, 700 F.2d 727, 731 (D.C. Cir. 1983) (quotations and citation omitted). Consistent with the limited privilege, the NLRB's Rules and Regulations require that a party obtain the written consent of the General Counsel to compel testimony by an employee of an NLRB regional office. See 29 C.F.R. § 102.118(a)(1). A party asserting injury from the erroneous assertion of this privilege bears the burden of establishing prejudice therefrom. See NLRB v. Health Tec Division/San Francisco, 566 F.2d 1367, 1372 (9th Cir. 1978).

On December 10, 1997, following the NLRB Regional Director's issuance of his Notice of Hearing, the Gas Company first requested, in a letter to the General Counsel of the NLRB, authorization to subpoena Agent Tener. In support, the Gas Company relied on the four objections upon which the NLRB had scheduled a hearing; significantly, there was no mention of a "missing" or "spoiled" ballot as a reason necessitating Agent Tener's testimony.[3]

The Regional Director withheld a ruling on the request that Agent Tener be required to testify until after the hearing on December 16, 1997. Following that hearing, the Regional Director determined that there was no dispute of fact that required the waiver of Agent Tener's limited privilege; therefore, he declined to permit the agent's testimony. The Gas Company responded that evidence produced at the hearing on December 16th had revealed a second spoiled ballot, thus necessitating the agent's testimony. Again, however, the Regional

_____

[3] The letter does mention "spoiled ballots" (J.A. 367); however, this reference merely sought to explain why Agent Tener's refusal to utilize pencils with erasers could have affected the outcome of the election (i.e., the failure to permit the use of erasers when coupled with the failure to instruct voters on the handling of "spoiled" ballots could have disenfranchised voters). There was no allegation in the Gas Company's letter of December 10, 1997, that there was a missing "spoiled" ballot.

Director declined this request because the Gas Company had made no objection to the election based on "spoiled ballots," specifically stating:

> Employer Counsel contends the testimony in the hearing conducted on December 16, 1997, revealed two spoiled ballots and requests production and copies of envelopes involving such. I am declining to provide any information regarding spoiled ballots. Objections filed in this matter made no reference to the issue of spoiled ballots. Rather, Objection No. 2, which inter alia is the subject of the hearing in the above-captioned matter, brought into issue a void ballot. Objection No. 11, which I overruled in my Second Supplemental Decision on Objections of December 17, 1997 also made reference to only a void ballot, not spoiled ballots. Although there is a reference to "spoiled ballots" in Employer's Objection No. 2, it is merely a reference to spoiled ballots in general rather than an allegation of objectionable conduct. None of the Employer's other objections make reference to spoiled ballots. Accordingly, any allegations concerning spoiled ballots are not within the scope of objections filed herein by the Employer. Clearly, any allegations as to objectionable conduct involving spoiled ballots could not be newly discovered or previously unavailable to Employer Counsel, which filed extensive objections involving the conduct of the election after what I presume was an exhaustive investigation regarding such. Rhone-Poulenc, Inc., 271 N.L.R.B. 1008 (1984).

J.A. 373. The Hearing Officer similarly rejected a"spoiled ballot" objection contained in the Gas Company's briefs based on the fact that the issue was "not contained in any of its objections filed by the Employer or addressed at the hearing." J.A. 331.

Notwithstanding that the Gas Company was specifically notified that it could take exception to the NLRB's refusal to address its argument relating to "spoiled ballots,"[4] none of the Gas Company's briefs

---

[4] In declining to address the"spoiled ballot" objection, the NLRB Hearing Officer noted: "Exceptions to all rulings, including rulings of the Regional Director, should be contained in the excepting party's brief to the Board." J.A. 331.

9

filed after that decision took exception to this NLRB ruling. We agree with the NLRB that it must be permitted to "prevent the piecemeal submission of objections" and avoid the delays in the certification process that would result from such objections. In that regard, parties must be required "to act promptly in unearthing and reporting to the Region any potentially objectionable conduct." Rhone-Poulenc, 271 N.L.R.B. at 1008. Given that the Gas Company did not take exception to the NLRB's clear administrative statement that this argument would not be considered because it was not the subject of any Gas Company objection, we agree with the NLRB that the Gas Company waived its argument arising out of the "failure to account" for Ms. Krapf's first ballot.

The Gas Company attempts to salvage this argument in several ways. First, it asserts that the generalized references to either "ballots" or "spoiled ballots" was sufficient to preserve the objection. We disagree; were a passing reference sufficient to preserve an objection, the objection process would have no worth. Simply put, to be preserved for appellate review, an allegation of error must be grounded in an appropriately specific objection. United States v. L.A. Tucker Truck Lines, Inc., 344 U.S. 33, 37 (1952) ("Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice."). Second, the Gas Company claims that its "saving" objection -- that "these and all other Union activities which the Board may discover during its investigation which would support the overturning of the election and the order for a new election" (J.A. 229) -- preserved the argument. However, we need not resolve whether this form of "saving objection" may preserve the opportunity to amend objections because the Gas Company took no action to either (1) amend its objections or (2) take exception to the NLRB's rejection of the missing spoiled ballot argument. We must therefore reject the Gas Company's "saving objection" argument.

Finally, the Gas Company contends that its argument should be preserved because the evidence necessary to raise the objection did not come to light until the hearing on December 16, 1997. For several reasons, this contention also fails to warrant overlooking the Gas

10

Company's waiver. First, after the Gas Company learned the facts underlying its argument, and after it was notified that its objections did not encompass any argument relating to spoiled ballots, it took no steps in the administrative proceedings to formally preserve or raise the objection. Second, the Gas Company's two arguments on this issue -- (1) that failure to preserve the "spoiled ballot" objection should be excused and (2) that Agent Tener should have been required to testify at the hearing -- are premised on the notion that the Gas Company could not obtain the facts underlying this objection until the NLRB hearing. These arguments rise and fall on a single false premise. In truth, the Gas Company had its own observers present throughout the election, and they could have provided the facts relating to Ms. Krapf's visits to the balloting area. Further, Ms. Krapf and other witnesses to the "missing spoiled ballot" incident are employees at the Gas Company, and they were thus available for the Gas Company to interview informally at any time prior to the hearing. In this light, the Gas Company could have interviewed all of these individuals and easily obtained the facts underlying the objection, and we, under these circumstances, cannot overlook its waiver.**5** In short, the Gas Company's allegations of "spoiled" ballots do not present an appropriate basis to overturn this election, and we affirm the NLRB's decisions on this issue.

Similarly, insofar as the Gas Company now bases its claim for Agent Tener's testimony upon "spoiled ballots," we agree with the

_____

**5** In a similar vein, we reject the Gas Company's other arguments on the "missing spoiled ballot" issue. First, given that the Gas Company had not properly objected, the NLRB had no obligation to independently investigate this claim. Second, although we carefully review claims of error when the election is closely decided, we will not overturn elections on the basis of objections that were not properly preserved. Finally, that the NLRB has declined to open the envelope containing Ms. Krapf's spoiled ballot is no basis to excuse the waiver or to overturn the election. The NLRB has an interest in preserving the secrecy of ballots, and were the NLRB to open the envelope containing Ms. Krapf's spoiled ballot, that action might reveal how Ms. Krapf cast her ballot. Because the Gas Company never objected on the basis of "spoiled" ballots, the NLRB's interest in preserving the secrecy of the voter's ballot clearly outweighed the Gas Company's interest in opening the envelope. We thus find no abuse of discretion on this issue.

11

NLRB that there was no need for the agent's testimony because the Gas Company had waived the objection by failing to file an objection to the election arising out of allegedly spoiled ballots. On the other hand, if the Gas Company bases its argument -- that Agent Tener should have been required to testify at the hearing-- upon the necessity to resolve other factual disputes, we agree with the NLRB that no material factual disputes remain on the record that necessitate the testimony of the Board Agent. We thus affirm the NLRB's decision declining permission for Agent Tener's testimony. **6**

B.

The Gas Company also contends that Agent Tener erred in permitting the Gas Company's "election observers" to maintain their own lists of voters. It asserts that this error affected the "laboratory conditions" during the election and should mandate overturning the election.

The facts underlying this claim of error are as follows. The voting was conducted in two sessions -- the morning and afternoon sessions -- with different persons observing on behalf of the Gas Company during each session. Prior to the morning session, a Gas Company lawyer gave one of the company observers a copy of the voting lists for her use during voting. However, before the polls opened, Agent Tener told the Gas Company and Union observers that the official "Excelsior**7** list" would be kept on the table in front of the observers' seats, and the observers were to place a check on the official list when employees came to vote. In addition, Agent Tener provided observers with instructions, which listed "THINGS NOT TO DO," stating "[Do not k]eep any list of those who have or have not voted." J.A. 210, 315

---

**6** Although we reject this argument as waived, our review of the merits of this objection gives us no pause. The uncontroverted testimony at the hearing established that the first ballot handled by Ms. Krapf was blank when it was returned to Agent Tener, and there is no dispute that Ms. Krapf did, in fact, subsequently cast a ballot. Although we do not resolve the issue, we fail to see how these facts could have constituted a basis to overturn the election.

**7** The lists are so named because their use was authorized in Excelsior Underwear Inc., 156 N.L.R.B. 1236 (1966).

12

(emphasis in original). The observers signed the instructions to acknowledge that they read them. This same process was repeated prior to the afternoon session.

During the morning session, Agent Tener apparently noticed that the company observer was holding a piece of paper and instructed the observers to place any papers or lists other than the official "Excelsior list" on their laps. During the morning session, the company observer checked off the names of all voters, and the observer returned that duplicate list to the Gas Company lawyer at the end of the session.

Shortly before the afternoon session, the Gas Company lawyer gave the second company observer the same copy of the duplicate list maintained by the first company observer. The lawyer directed the second company observer to keep the duplicate list in his lap and check off the name of each voter. Agent Tener again instructed the observers to keep any papers or lists in their laps, and the second company observer checked off the name of each voter during that session. At the end of the session, the second company observer returned the list to the lawyer.

Based on these facts, the Gas Company contends that when Agent Tener permitted the company observers to keep the lists on their laps, the agent implicitly advised them that they could keep lists of voters. The Gas Company claims that voting could have been affected because the room layout was such that voters could have observed their names being recorded, and the Gas Company therefore asserts that the election should be overturned.

On the contrary, we find no abuse of discretion in the NLRB's decision to overrule this objection. First, we agree with the NLRB that the Gas Company should not be permitted to overturn an election based on conduct that was encouraged, if not specifically commanded, by the Gas Company itself. It is undisputed that the Gas Company lawyer instructed the observers to maintain duplicate lists, although the Gas Company contends that it merely instructed the observers to record challenged voters. The Gas Company's protestations of innocence are undermined by the fact that its lawyer passed the same duplicate voting list -- upon which each voter during the morning session had been recorded -- to the company observer dur-

13

ing the afternoon session. Presumably, the lawyer observed that the list contained numerous markings but, rather than properly instructing the afternoon observer, merely passed the duplicate list to that observer. It thus appears that the Gas Company caused, or was complicit in, the maintenance of duplicate lists, and we decline to overturn the NLRB certification under such circumstances.

Further, it is true that the NLRB "has long maintained a policy prohibiting anyone from keeping a list, aside from the official eligibility list, of employees voting in a representation election." Medical Center of Beaver County, Inc. v. NLRB, 716 F.2d 995, 999 (3d Cir. 1983). However, the core of the NLRB's review over an error relating to such lists is whether:

> employee voters know, or reasonably can infer, that their names are being recorded on unauthorized lists. Absent such knowledge or inference on the part of voters, any list-keeping activity, although technically prohibited, obviously could not interfere with the exercise of voter free choice and would not warrant setting aside an election.

Id. (quotations and citations omitted). In this vein, the Gas Company's argument fails because there is no evidence, direct or circumstantial, that any voter noticed the company observers recording their vote. Thus, ignoring that Agent Tener's written instructions clearly prohibited the observers from maintaining lists, even if Agent Tener countenanced the maintenance of such lists in some way, those lists evidently failed to affect a single voter. We must also affirm the NLRB on this issue.

C.

In another objection, the Gas Company asserts that Agent Tener left the ballot area for a bathroom break, and during this break, the agent did not seal the ballot box or take any precautions to prevent tampering. The Gas Company concedes that there were observers for both the Union and the company in the room at the time and that no one saw any vote tampering; however, the Gas Company asserts that leaving the ballot box unattended violated the NLRB Manual. In this light, the company asserts that we must demand affirmative testimony

14

accounting for the unattended ballots before we affirm the election results.

We also reject this objection as a basis for overturning the election. The uncontroverted evidence established that there were Union and company observers in the room when Agent Tener left for a few minutes, and not a single voter cast a ballot during the agent's absence from the voting area. Under these circumstances, even assuming a technical violation of the NLRB Manual, the violation had no apparent effect on the voting, and we must affirm the NLRB on this issue.

D.

The Gas Company also notes that the NLRB Manual suggests that when election observers leave the company of the Board Agent, that observer should be accompanied by an observer for the other side so as to prevent electioneering. In reliance thereon, the Gas Company asserts that the Board Agent erred in permitting two observers to leave the polling area unescorted. In addition, the Gas Company contends that the Union observer spoke with an eligible voter during this time, thereby engaging in prohibited electioneering.

The evidence on this issue establishes that the Union observer was permitted to go to the bathroom, and while in the bathroom, the Union observer told an employee, who had already voted, that "[the election is] almost over." J.A. 79. Similarly, the company observer was permitted to smoke a cigarette without an escort, but there was no evidence that the company observer spoke to anyone during the cigarette break. In this light, no conduct that occurred can be fairly characterized as "electioneering," and no prejudice of any kind can be demonstrated. We therefore also affirm the NLRB on this issue.[8]

_____

[8] The Gas Company also argues on appeal that its other objections demonstrate that the NLRB abused its discretion in certifying the Union. Among other things, it asserts that: (1) during pre-election campaigning, the Union improperly conditioned the waiver of Union initiation fees on the signing of Union authorization cards; (2) the Union improperly misled the employees about the Gas Company's position relating to the Union by including, in its propaganda, a document that utilized Gas Company letterhead; (3) the NLRB erred in permitting no absentee bal-

15

III.

We thus conclude that minor violations and non-violations of "policy," having no apparent affect on an election result, may not serve as the basis to overturn such election. For example, as noted above, the Gas Company alleged that the NLRB's voiding of a ballot containing identical marks in the "Yes" and "No" boxes constituted a stand-alone basis for invalidating this election. The simple people of Appalachia would say that arguments like these "don't pass the smell test"; any common sense review would compel dismissal of such assertions without pause. More importantly, plainly meritless contentions undermine a litigant's credibility and diminish the force of other arguments. At bottom, the Gas Company's attempt to create the illusion of pervasive error (see Judge Craven's observations in Sawyers, supra note 2) is based on the fact that this election was a close one. Elections decided by narrow margins are closely scrutinized; there is, however, simply no presumption against the validity of a closely contested election. Cf. NLRB v. Browning-Ferris Indus. of Louisville, Inc., 803 F.2d 345, 349 (7th Cir. 1986) ("While . . . the closeness of the vote may be [a] relevant consideration[ ] in determining whether free choice was interfered with . . . [this] fact is [not] sufficient to raise a presumption that the [complained of] conduct had an impact on the election results.") (citation omitted).

IV.

For these reasons, we conclude that the NLRB did not abuse its discretion in certifying this election, and we order that the NLRB's Order be enforced.

PETITION FOR REVIEW DENIED AND CROSS-APPLICATION FOR ENFORCEMENT GRANTED

_____

lots; and (4) the NLRB erred by voiding a ballot that had identical marks in both the "Yes" and "No" boxes. We have carefully considered each of these objections and do not find an abuse of the NLRB's discretion in connection with any of them.