**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 03-2502**

───────────────

MAIL CONTRACTORS OF AMERICA, INCORPORATED,

Petitioner,

versus

NATIONAL LABOR RELATIONS BOARD,

Respondent,

TEAMSTERS LOCAL 470,

Intervenor.

───────────────

**No. 04-1050**

───────────────

NATIONAL LABOR RELATIONS BOARD,

Petitioner,

versus

MAIL CONTRACTORS OF AMERICA, INCORPORATED,

Respondent.

───────────────

On Petition for Review and Cross-application for Enforcement of an
Order of the National Labor Relations Board.  (4-CA-32337)

───────────────

Submitted:  September 23, 2004        Decided:  February 15, 2005

Before WIDENER, KING, and DUNCAN, Circuit Judges.

_____

Petition for review denied; cross-application for enforcement granted by unpublished opinion. Judge Duncan wrote the majority opinion, in which Judge King concurred. Judge Widener wrote a separate opinion concurring in the result.

_____

Jeffrey W. Pagano, Jonathan A. Moskowitz, Herbert I. Meyer, KING, PAGANO & HARRISON, New York, New York, for Mail Contractors of America, Inc. Arthur F. Rosenfeld, General Counsel, John E. Higgins, Jr., Deputy General Counsel, John H. Ferguson, Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, Fred L. Cornnell, Supervisory Attorney, Christopher W. Young, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for the Board. William H. Haller, FREEDMAN AND LORRY, P.C., Philadelphia, Pennsylvania, for Intervenor.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

DUNCAN, Circuit Judge:

Mail Contractors of America, Inc. (MCA) petitions for review of the final order of the National Labor Relations Board (NLRB) in an unfair labor practice proceeding, and the NLRB has filed a cross-application for enforcement of its order. The order at issue directed MCA to negotiate with Local 470 of the International Brotherhood of Teamsters, AFL-CIO (Local 470), as the newly certified collective-bargaining representative of MCA's employees. At the proceeding, MCA admitted its refusal to bargain with Local 470 but asserted that it was entitled to do so based on two challenges it had raised in the earlier election certification proceeding that resulted in Local 470 being certified as the collective bargaining representative for MCA's employees. Because we find that the NLRB's decision is reasonable and based upon substantial evidence, we deny MCA's petition and grant the NLRB's cross-application for enforcement.

I.

On April 15, 2003, Local 470 petitioned the NLRB to be recognized as the collective bargaining representative of all full-time and regular part-time drivers and mechanics employed by MCA at its distribution facilities in Philadelphia, Pennsylvania and Swedesboro, New Jersey. Local 470 requested that employees eligible to vote on the matter be allowed to submit their ballots

by mail between May 30, 2003 and June 16, 2003. Forty-one of the forty-seven employees eligible to vote returned ballots by the deadline, and a majority of twenty-eight voted to appoint Local 470 as their representative. The NLRB's Regional Director certified the results on June 17, 2003.

MCA filed objections to the election three days later, arguing that Local 470 had engaged in two forms of prohibited electioneering. First, MCA alleged that Local 470 had mailed a leaflet entitled "WHO IS KIDDING WHOM" to the homes of eligible voters that discussed purported misrepresentations by MCA regarding the consequences of unionization. Second, MCA alleged that Local 470 had programmed the screen-saver on a computer terminal used by voting employees to continuously scroll the message "VOTE YES LOCAL 470 AND JESUS WILL FORGIVE YOUR SINS." J.A. 11-12. The Regional Director overruled MCA's objections, finding that MCA had failed to sustain its burden of proof as to each allegation and that both objections were predicated on dubious extensions of NLRB rulings. On August 20, 2003, the NLRB adopted the Regional Director's findings and recommendations.

In order to secure further review of the NLRB's certification decision,[1] MCA refused to bargain with Local 470, precipitating the

_____

[1]Because the NLRB's certification of Local 470 as representative is not a final "order" subject to review, "review of certification proceedings must await a final order by the [NLRB] in an unfair labor practice proceeding (often called a 'technical refusal to bargain')" under 29 U.S.C. §§ 160(e), (f) (2000).

- 4 -

commencement of an unfair labor practice proceeding. In that proceeding, MCA simply reiterated its objections to the validity of the election without presenting new evidence. Because MCA failed to allege new legal or factual issues in its defense to the unfair labor practice charge, the NLRB entered an order granted summary judgement against MCA. MCA thereafter petitioned this court for review, and the NLRB filed its cross-application for enforcement.

## II.

This court will uphold the certification of an NLRB-supervised election "[s]o long as the NLRB's decision is reasonable and based upon substantial evidence in the record considered as a whole." Elizabethtown Gas Co. v. NLRB, 212 F.3d 257, 262 (4th Cir. 2000). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Consol. Diesel Co. v. NLRB, 263 F.3d 345, 351 (4th Cir. 2001) (internal quotation omitted). Additionally, "[t]he results of an NLRB-supervised representative election are presumptively valid." NLRB v. Ky. Tenn. Clay Co., 295 F.3d 436, 441 (4th Cir. 2002) (internal quotations omitted). Consequently, the challenging party must bear the heavy burden of proving, by specific evidence, both

---

Family Serv. Agency San Francisco v. NLRB, 163 F.3d 1369, 1373 n.2 (D.C. Cir. 1999) (citing Am. Fed'n of Labor v. NLRB, 308 U.S. 401 (1940)). The certification proceeding then becomes part of the record for review in the unfair labor practice case pursuant to 29 U.S.C. § 159(d) (2000). See id.

that improprieties occurred and that these improprieties prevented a fair election. By extension, "minor violations . . . of 'policy,' having no apparent affect on an election result, may not serve as the basis to overturn such election." Elizabethtown Gas, 212 F.3d at 268; Case Farms of N.C., Inc. v. NLRB, 128 F.3d 841, 844 (4th Cir. 1997) (noting that while the NLRB's goal in supervising elections is to create "laboratory conditions" in which to ascertain the desires of the employees, "elections do not occur in a laboratory," and, accordingly, "the actual facts must be assessed in the light of realistic standards of human conduct" (internal quotations omitted)).

A.

Turning to MCA's first allegation, that Local 470 committed prohibited electioneering by mailing the "WHO IS KIDDING WHOM" pamphlet to the homes of eligible voters, we find no error. In support of its claim, MCA presented a copy of the leaflet and an envelope bearing a United States Mail postmark from which it had redacted the addressee. MCA alleges, without additional support, that this envelope was sent to an eligible voter and received during the balloting period. Based on this evidence, MCA argues Local 470 violated the rule announced in Milchem, Inc., 170 NLRB 362 (1968), in which the NLRB set aside the results of an election

because a union representative spoke with employees as they waited in line to vote.[2]

We agree with the NLRB that MCA's evidence is inadequate to sustain this objection.  The party objecting to the results of a certification election bears an affirmative burden of "adducing prima facie facts that, if proven true, would invalidate the election."  NLRB v. McCarty Farms, Inc.,  24 F.3d 725, 728 (5th Cir. 1994) (emphasis added); see also NLRB v. Regional Home Care Servs., Inc., 237 F.3d 62, 67 (1st Cir. 2001) ("The side claiming taint of an election, or any unfairness that warrants the election being set aside, bears the burden of proof on the issue.").  Thus, MCA must present evidence that Local 470 a) engaged in the equivalent of "prolonged conversations," b) with an employee eligible to vote, c) before the employee cast his or her ballot.  See NLRB v. WFMT, 997 F.2d 269, 274-75 (7th Cir. 1993) (discussing Milchem).

Conclusory allegations as to the Milchem elements are insufficient to satisfy the heavy burden attendant to proving an election violation.  See Selkirk Metalbestos v. NLRB, 116 F.3d 782, 787 (5th Cir. 1997).  There is nothing in the record to support MCA's assertion that the pamphlet was actually received by eligible voters during the voting period, that any of the voters had yet to

_____

[2]In resolving MCA's objection, we assume without deciding that the Milchem rule applies to elections by mail ballot.

- 7 -

vote when it was received, or even that Local 470 sent it.  In light of these and other deficiencies, we find no reason to overturn the NLRB's decision that MCA failed to demonstrate prohibited electioneering with respect to the "WHO IS KIDDING WHOM" pamphlets.[3]


                                    B.

We find MCA's second objection, predicated on an extension of the rule in Peerless Plywood Co., 107 NLRB 427 (1953) (prohibiting employers from giving mass "captive audience" speeches to employees during the period beginning 24 hours before the actual balloting period begins), to be equally lacking in merit.  In its objection, MCA alleged that an agent of Local 470 programmed the screen saver on a computer in the employees' work room to scroll the words "VOTE YES LOCAL 470 AND JESUS WILL FORGIVE YOUR SINS."  MCA argues that this message constituted mass speech to the "captive audience" of employees on shift on the three days during which the message was displayed, as MCA used this computer terminal to communicate safety messages to the drivers at that facility.

---

[3]To the extent MCA argues its otherwise unsupported allegations should be accepted as fact because Local 470 did not present contrary evidence, we note that Universal Camera Corp. v. NLRB, 340 U.S. 474 (1951), concluded that the substantial evidence standard requires the petitioner "do more than create a suspicion of the existence of the fact to be established." Id. at 477 (internal quotations omitted and emphasis added).

In Peerless Plywood the NLRB explicitly prohibited employers and unions "from making election speeches on company time to massed assemblies of employees within 24 hours before the scheduled time for conducting an election." 107 NLRB at 429. However, the NLRB later clarified that Peerless Plywood does not prevent either the employer or the union from campaigning, even during the "Plywood" period, "through mailings to employees at their homes, [and] in the workplace, where they can distribute and post literature, communicate with employees one-on-one, and even continue to conduct mass meetings, as long as the meetings are on the employees' own time and attendance is not mandatory." San Diego Gas & Elec., 325 NLRB 1143, 1146 (1998) (emphasis added). The screen saver message falls well within the scope of such permitted conduct. Additionally, a scrolling message on a single computer is dissimilar from the "captive audience" speech at issue in Peerless Plywood, as it lacks the potential "to create a mass psychology which overrides arguments made through other campaign media." 107 NLRB at 429.

MCA's Peerless Plywood objection further suffers from the same evidentiary deficiencies that doomed its Milchem objection. MCA offers nothing beyond bare allegations that Local 470 was responsible for generating the screen saver message or that any of the employees working at MCA's facility on the weekend when the screen saver message was displayed could have seen it. MCA's

unsupported assertions fall short of its obligation to provide "specific evidence of specific [violations]."[4]    Selkirk Metalbestos, 116 F.3d at 787.


                                    III.

     In light of the foregoing, we find that MCA's objections to the certification election were meritless.  The NLRB precedents on which MCA relied were easily distinguishable, particularly given the paucity of evidence adduced by MCA.  Accordingly, we deny MCA's petition for review and grant the NLRB's cross-application for enforcement of its order.


                                    PETITION FOR REVIEW DENIED;
                                         CROSS-APPLICATION FOR
                                           ENFORCEMENT GRANTED

---

[4]Similarly, MCA offers no basis on which to constructively charge Local 470 with responsibility or to assume that the employees witnessed the message.  Although actions taken by a "Union adherent" may nevertheless be "sufficiently substantial in nature to create a general environment of fear and reprisal such as to render a free choice of representation impossible," and thus require that the election be voided, Methodist Home v. NLRB, 596 F.2d 1173, 1183 (4th Cir. 1979), the screen saver message is so innocuous as to make Methodist Home inapposite.

- 10 -

WIDENER, Circuit Judge, concurring:

I concur in the result.