PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2585
_____

NATIONAL LABOR RELATIONS BOARD,
                                        Petitioner

v.

FEDEX FREIGHT, INC.,
                        Respondent


_____

No. 15-2712
_____


FEDEX FREIGHT, INC.,
                        Petitioner

v.

NATIONAL LABOR RELATIONS BOARD,
                                Respondent
_____

On Application for Enforcement and Cross Petition for
Review of an Order of the National Labor Relations Board
(NLRB Docket No. 22-CA-146653)
_____

Argued: March 1, 2016

Before:  AMBRO, JORDAN, and SCIRICA, *Circuit Judges*.

(Filed: August 9, 2016)

Linda Dreeben
Jill A. Griffin
Milakshmi V. Rajapakse     [ARGUED]
National Labor Relations Board
1015 Half Street, SE
Washington, DC  20570
        *Counsel for National Labor Relations Board*

Brett M. Anders
Jackson Lewis
220 Headquarters Plaza
East Tower, 7th Floor
Morristown, NJ  07960

David A. Prather
Ivan Rich, Jr.          [ARGUED]
FedEx Freight Corp
1715 Aaron Brenner Drive
Suite 600
Memphis, TN  38120
        *Counsel for FedEx Freight, Inc.*

———————————————

OPINION

———————————————

**SCIRICA**, *Circuit Judge*

The National Labor Relations Board certified a collective-bargaining unit comprised of FedEx Freight, Inc. drivers at FedEx's South Brunswick Terminal in Monmouth Junction, New Jersey. To test the appropriateness of the unit, FedEx refused to bargain with the unit's certified bargaining representative, Local 701, contending the terminal's dockworkers must also be included in the unit.[1] The Regional Director issued an unfair labor practices order against FedEx, and the Board granted summary judgment in favor of the union. FedEx filed a petition for review, contending the Board (having adopted the Regional Director's reasoning) abused its discretion in certifying the unit because it applied a unit-determination standard from *Specialty Healthcare &*

———————————————

[1] "[T]o challenge the union's certification the employer must refuse to bargain, triggering unfair labor practice proceedings under Section 8(a)(5)." *Wellman Indus., Inc. v. NLRB*, 490 F.2d 427, 430 (4th Cir. 1974); *see also St. Margaret Mem'l Hosp. v. NLRB*, 991 F.2d 1146, 1151 n.5 (3d Cir. 1993) ("Because certification orders are not final appealable orders, St. Margaret had to expose itself to unfair labor practice charges in order to challenge the validity of the certification in the courts." (internal citations omitted)).

*Rehabilitation Center*, 357 N.L.R.B. No. 83 (2011), *enforced sub nom. Kindred Nursing Centers East, LLC v. NLRB*, 727 F.3d 552 (6th Cir. 2013). It contends this decision violated Board precedent, the National Labor Relations Act, and the Administrative Procedure Act. Alternatively, FedEx contends that even if the *Specialty Healthcare* standard applies, the Board abused its discretion by failing to properly apply it here.[2]

Because the Board's interpretation of the legal standard to apply in unit-determination cases in *Specialty Healthcare* was reasonable, and the Board properly applied that standard here, we will deny the petition for review and grant the Board's cross-petition for enforcement of its order to bargain.

## I.

FedEx provides pick-up and delivery services to customers throughout the United States and has a service center, or "terminal"—the South Brunswick Terminal—in Monmouth Junction, New Jersey. This terminal has an administrative building and a dock where freight is loaded and unloaded onto FedEx trucks by FedEx dockworkers. There is also a yard surrounding the office building and dock where these dockworkers move and store vehicles and equipment.

---

[2] The Board had jurisdiction under 29 U.S.C. § 160(a) of the NLRA. We have jurisdiction over this appeal from the Board's decision under 29 U.S.C. § 160(e) because FedEx conducts business in New Jersey.

The FedEx employees at issue here are city and road drivers and dockworkers.[3] City drivers transport freight locally, and road drivers transport freight over longer distances. The petitioned-for unit is comprised of all drivers, both city and road, but excludes all dockworkers. FedEx's South Brunswick Terminal employs eighty-one city drivers, thirty-three road drivers, and fifty-two dockworkers. All drivers are full-time employees, and twenty of the fifty-two dockworkers are full-time employees—the other thirty-two dockworkers are part-time.

The basic requirements for city and road drivers are the same—all drivers must have a commercial driver's license, at least one year of relevant driving experience (or have gone through FedEx's one-year dock-to-driver program, *see infra*), and have acceptable motor-vehicle reports. They must also submit to random drug testing and wear company-issued uniforms. All drivers spend most of their working time away from the dock and are supervised remotely by dispatchers—operational supervisors who rotate between dock and dispatch supervision. In addition, either type of driver "[m]ay be required to perform job duties of [the other type of driver] or [of] a dock employee where operationally necessary." J.A. 72, 74–75.

The differences between city and road drivers primarily relate to compensation. Although all drivers' wages are based on their years of experience, city drivers are paid between $20.63 and $24.93 per hour, whether or not they are driving or working on the dock. Road drivers make the same

---

[3] Neither party contends the South Brunswick Terminal's administrative employees should be part of the unit.

as city drivers when working on the dock or driving locally, but make between $0.53 and $0.62 per mile when driving longer distances.

Unlike drivers, dockworkers work only in the yard or on the dock. Dockworkers load freight onto outbound trailers and unload freight from inbound trailers. They may occasionally drive forklifts and other vehicles within the yard to move equipment from place to place ("hostling"),[4] but this driving does not require a commercial driver's license nor involve the types of vehicles city and road drivers use.

Moreover—unlike the requirements for drivers—no relevant work experience is required to be a dockworker. Dockworkers are also not required to wear uniforms nor are they subject to random drug testing. Full-time dockworkers, like drivers, select their schedules based on seniority. But part-time dockworkers do not—FedEx assigns part-time dockworkers to a shift when they are hired.

Dockworkers also earn considerably less than drivers. Full-time dockworkers earn an average of $20.13 an hour— fifty cents per hour less than the average city driver—and part-time dockworkers make only between $16.31 and $18.31 per hour. Dockworkers have an opportunity to become drivers through the "dock-to-driver" program,[5] but only about 19

---

[4] FedEx describes hostling as "staging trailers in the yard by moving an empty trailer to a specific door on the dock for loading, or moving a trailer that was just unloaded away from the dock." J.A. 188 n.6.

[5] This program allows dockworkers to train to become drivers with FedEx, and includes a five-week training course to help

percent of FedEx's drivers at the South Brunswick Terminal (24 percent of the road drivers and 16 percent of the city drivers) graduated from the program. No employee has moved in the opposite direction—from driver to dockworker.

Because drivers and dockworkers are employed by FedEx, they unsurprisingly have some common conditions of employment. All drivers and dockworkers are eligible for the same retirement, healthcare benefits, and personal days off (although part-time dockworkers do not receive paid holidays and cannot accrue paid vacation time). In addition, all drivers and dockworkers share the same break room and locker rooms and must abide by the "General Responsibilities" handbook for all FedEx employees. And, as noted, drivers spend a small amount of their time doing dock work. In 2012, about 3.5 percent of city drivers' time and 10 percent of road drivers' time was spent performing dock work at the South Brunswick Terminal.[6]

## II.

We first address whether FedEx preserved its challenges to *Specialty Healthcare*. In this case, FedEx incorporated the arguments from its previous request for review of the Regional Director's unit determination in its Response to Notice to Show Cause. Parties often incorporate, rather than restate, prior arguments because of the Board's

---

dockworkers get a commercial driver's license. Dockworkers work full-time as dockworkers while participating in the program.

[6] In 2012, this represented 14 percent of all dock work performed at the South Brunswick Terminal.

"no-relitigation rule." *Nathan Katz Realty, LLC v. NLRB*, 251 F.3d 981, 987 (D.C. Cir. 2001). Under this rule, "[d]enial of a request for review [by the Board of the Regional Director's decision] shall . . . preclude relitigating any such issues in any related subsequent unfair labor practice proceeding." 29 C.F.R. § 102.67(g) (2015); *see also Nathan Katz*, 251 F.3d at 986 (explaining that under this rule an employer may "incorporate[] by reference and reaffirm[] by reference its post election objections") (internal quotation marks and citation omitted)). Here, FedEx incorporated in its Response to Notice to Show Cause "the reasons and legal arguments set forth in [its] Request for Review as the basis for its refusal to recognize the Union." J.A. 217. Therefore, we will consider the arguments set forth in this prior proceeding.

The Board contends FedEx waived any challenges to *Specialty Healthcare* because, in its request for review, FedEx applied the overwhelming-community-of-interest standard described in *Specialty Healthcare* rather than argue *Specialty Healthcare* was wrongly decided. FedEx stated its disapproval of the *Specialty Healthcare* decision in a footnote.

Under 29 U.S.C. § 160(e), "[n]o objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." 29 U.S.C. § 160(e). The crucial question in a section 160(e) analysis is whether the Board "'received adequate notice of the basis for the objection.'" *FedEx Freight, Inc. v. NLRB*, 816 F.3d 515, 521 (8th Cir. 2016) (quoting *Nathan Katz*, 251 F.3d at 985); *see also NLRB v. FES*, 301 F.3d 83, 89 (3d Cir. 2002) (holding that because

the "tenor of FES's challenge before the Board raised a purely factual question" and did not "provide[] the basis for its challenge," FES failed to raise the issue before the Board); *Nathan Katz*, 251 F.3d at 986 (explaining a petitioner "has forfeited its right to challenge the Board's disposition" when the petitioner "completely fails to raise an issue during an unfair labor practice proceeding" (internal citation and quotation marks omitted)).

Despite the Board's arguments to the contrary, FedEx's footnote in its petition for review provided sufficient notice. The footnote reads:

> [FedEx] posits that *Specialty Healthcare* was decided erroneously, largely for the reasons cited in Member Hayes' dissent therein. However, on the assumption that [the] Board will not now revisit its decision there, [FedEx] alternatively contends that the case at bar was decided incorrectly even under the rule of *Specialty Healthcare* and its progeny.

J.A. 183 n.4. As indicated, the footnote states clearly "that *Specialty Healthcare* was decided erroneously," and gives as the basis for its challenge "the reasons cited in Member [Brian] Hayes'[s] dissent therein." *Id.* The footnote also states that FedEx's argument under *Specialty Healthcare*'s overwhelming-community-of-interest test was an alternative argument. Its primary argument was that "*Specialty Healthcare* was decided erroneously." But, "on the assumption that [the] Board [would] not now revisit its decision," FedEx focused its briefing under the alternative

9

theory. *Id.*[7]

Board Member Harry Johnson's concurrence in the Board's summary affirmance of the Regional Director's unit determination indicates this footnote provided sufficient notice of FedEx's *Specialty Healthcare* challenge. Johnson declined to apply the *Specialty Healthcare* test, finding the unit appropriate under the traditional community-of-interests test. But he recognized the employer's argument that the *Specialty Healthcare* standard was misapplied and "acknowledge[d] the well-argued points of the Employer in this case and [in] recent cases" that the Board's holding in *Specialty Healthcare* was incorrect. J.A. 4 n.1.

Johnson's concurrence reflects the Board's acute awareness of recent and active challenges to *Specialty Healthcare*. *See Macy's, Inc. v. NLRB*, No. 15-60022, ----f.3d----, 2016 WL 3124847, at *6–*9 (5th Cir. Jun 2, 2016) (addressing challenges to the unit-determination test described in *Specialty Healthcare*); *Nestle Dreyer's Ice Cream Co. v. NLRB*, 821 F.3d 489, 498–502 (4th Cir. 2016)

---

[7] In a parallel case, the Eighth Circuit also held FedEx did not waive the *Specialty Healthcare* argument. *See FedEx Freight*, 816 F.3d at 521 ("FedEx stated in a footnote in each of its requests for review of the determinations by the regional director that '*Specialty Healthcare* was decided erroneously' for the reasons stated in Board member Hayes' dissent. . . . The Board was aware of the FedEx challenge to *Specialty Healthcare* . . . . This gave the Board adequate notice that FedEx was objecting to the regional director's use of the *Specialty Healthcare* framework. We therefore have jurisdiction to review the FedEx claims.").

(same); *FedEx Freight*, 816 F.3d at 521–26 (same). The facts at issue and legal standards used in these cases parallel those here. It seems impossible, therefore, that the Board was not on notice FedEx would challenge the Board's *Specialty Healthcare* decision.

Moreover, because the Board has refused to reconsider its holding in *Specialty Healthcare*, employers have chosen to challenge the validity and validation method of unit certifications by refusing to bargain with the union, and appealing these determinations to the relevant federal court of appeals. Accordingly, it is not surprising that FedEx did not pursue its challenge to *Specialty Healthcare* more vigorously in its request for review before the Board, opting instead to preserve its challenge for this appeal. *See also FedEx Freight*, 816 F.3d at 521.

Because the Board in this case had adequate notice of FedEx's challenges to *Specialty Healthcare*, there was no waiver of these challenges, and we have jurisdiction to review them.

## III.

The primary issue before us is whether the *Specialty Healthcare* Board's clarification of its unit-determination analysis is reconcilable with prior Board precedent, the NLRA, and the APA. FedEx presses us to overrule *Specialty Healthcare*, contending it misapplied the initial community-of-interest test and improperly created a new heightened standard—the overwhelming-community-of-interest test.

Section 9(a) of the NLRA provides for the designation or selection of an exclusive representative for the purposes of

11

collective bargaining "by the majority of the employees in a unit appropriate for such purposes." 29 U.S.C. § 159(a). The Supreme Court has held that section 9(a) "implies that the initiative in selecting an appropriate unit resides with the employees" and that "employees may seek to organize 'a unit' that is 'appropriate'—not necessarily *the* single most appropriate unit." *Am. Hosp. Ass'n v. NLRB*, 499 U.S. 606, 610 (1991) (emphasis in original). Accordingly, a union need not be representative of all employees at a company, but might only include employees "in a particular craft, or perhaps just a portion thereof." *Id.*[8]

To guide its resolution of unit determinations, the Board may craft rules through rulemaking or adjudication. *Id.* at 611–13. Because these rules interpret the NLRA, they are subject to the principles of *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984). *See NLRB v. United Food & Commercial Workers Union, Local 23*, 484 U.S. 112, 123–24 (1987) (hereinafter "*UFCW*"). Under *Chevron*, if Congress has not "spoken to the precise question at issue" and "the statute is silent or ambiguous with respect to the specific issue, the question for the [reviewing] court is whether the agency's answer is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 842–43. Reviewing courts must "respect the judgment of the agency empowered to apply the law to varying fact patterns, even if the issue with nearly equal reason might be resolved one way rather than another." *Holly Farms Corp. v. NLRB*, 517 U.S. 392, 399 (1996) (internal citation and formatting omitted); *see also UFCW*, 484 U.S. at 123 (explaining we "accord[] the

---

[8] Section 9(b) of the NLRA grants the Board the authority to determine whether a unit is appropriate. 29 U.S.C. § 159(b).

Board deference with regard to its interpretation of the NLRA as long as its interpretation is rational and consistent with the statute"); *NLRB v. N.J. Bell Tel. Co.*, 936 F.2d 144, 147 (3d Cir. 1991).

A Board decision may be unreasonable if it incorporates new law but fails to "clearly announce[]" the law, as this inhibits appellate courts' "review [of the legal changes] for their reasonableness and their compatibility with the Act." *Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 378 (1988); *see also Comite' De Apoyo a Los Trabajadores Agricolas v. Perez*, 774 F.3d 173, 190 (3d Cir. 2014) ("Failure to consider relevant factors or provide an adequate explanation for an agency action are indeed among the wide range of reasons why agency action may be judicially branded as arbitrary and capricious." (internal citation and quotation marks omitted)).

In *Specialty Healthcare*, the Board articulated a two-step unit-determination test. First, under the initial community-of-interest test, the Board determines whether the unit is an appropriate unit, applying relevant traditional factors. 357 N.L.R.B. No. 83, at *15. And second, if notwithstanding this finding, a party contends additional employees should be added, the Board looks at whether the "employees in the more encompassing unit share 'an overwhelming community of interest' such that there 'is no legitimate basis upon which to exclude certain employees from it.'" *Id.* at *16 (quoting *Blue Man Vegas, LLC v. NLRB*, 529 F.3d 417, 421 (D.C. Cir. 2008)).

This heightened showing is required because "the statute requires only *an* appropriate unit" and "it cannot be

that the mere fact that they also share a community of interest with additional employees renders the smaller unit inappropriate." *Id.* at \*15 (citing *Blue Man Vegas*, 529 F.3d at 421; *Dunbar Armored, Inc. v. NLRB*, 186 F.3d 844, 847 (7th Cir. 1999); and *Montgomery Ward & Co.*, 150 N.L.R.B. 598, 601 (1964)). The Board explained that although it "has sometimes used different words to describe this [overwhelming-community-of-interest] standard and has sometimes decided cases such as this without articulating any clear standard," its evaluation of Board and appellate court precedent showed it had consistently applied a heightened standard in such situations. *Id.* at \*17.

## **A.**

We hold the initial community-of-interest test described and applied by the Board in *Specialty Healthcare* was in line with Board precedent. In *Specialty Healthcare*, the Board explained that for a bargaining unit to be appropriate, its members must share a community of interest. This determination requires an analysis and weighing of "traditional" relevant criteria or factors. *Specialty Healthcare*, 357 N.L.R.B. No. 83, at \*15. These factors may include:

> "[W]hether the employees are organized into a separate department; have distinct skills and training; have distinct job functions and perform distinct work . . . [have] job overlap . . . ; are functionally integrated with the Employer's other employees; have frequent contact with other employees; interchange with other employees; have distinct terms and conditions of employment; and are separately supervised."

*Id.* (quoting *United Operations, Inc.*, 338 N.L.R.B. No. 18, 2002 WL 3125799, at \*1 (2002)); *see also NLRB v. Saint Francis Coll.*, 562 F.2d 246, 249 (3d Cir. 1977); *Bartlett Collins Co.*, 334 N.L.R.B. 484, 484 (2001) ("In determining whether the employees possess a separate community of interest, the Board examines such factors as mutuality of interest in wages, hours, and other working conditions; commonality of supervision; degree of skill and common functions; frequency of contact and interchange with other employees; and functional integration.").

Applying this standard, the *Specialty Healthcare* Board noted similarities among the employees within the petitioned-for unit, and distinctions between them and excluded employees. *See Specialty Healthcare*, 357 N.L.R.B. No. 83, at \*14. ("[Included employees] wear distinctive [uniforms]," have "separate and distinct" supervision, have "distinct wage scale," and there was limited interaction between the groups). The Board also found "no evidence of significant functional interchange or overlapping job duties" between included and excluded employees, *id.*, and emphasized the importance of departmental structure as an organizing principle, *see id.* at \*17.

This initial community-of-interest test—and its application—reflects the standard used by the Board in prior decisions. *See Macy's,* 2016 WL 3124847, at \*7 ("The community of interest test articulated in *Specialty Healthcare* and applied in this case was taken from the Board's 2002 decision in *United Operations* . . . [and] does not look only at the commonalities within the petitioned-for unit" but asks "'whether the employees are organized into a *separate department* . . . [and] have *distinct* skills and training . . . .'"

(emphasis in original) (quoting *Specialty Healthcare*, 357 N.L.R.B. No. 83, at \*14)). Accordingly, the Board's initial community-of-interest analysis in *Specialty Healthcare* was not an abuse of discretion.[9]

## **B**.

FedEx next contends the *Specialty Healthcare* Board abused its discretion by standardizing the heightened "overwhelming-community-of-interest" test it applies when an interested party claims "the smallest appropriate unit

---

[9] The *Specialty Healthcare* Board's analysis under the initial community-of-interest test is also in line with our precedent. We have described twelve factors the Board often considers in unit determinations:

> (1) similarity in the scale and manner of determining earnings; (2) similarity in employment benefits, hours of work and other terms and conditions of employment; (3) similarity in the kind of work performed; (4) similarity in the qualifications, skills and training of the employees; (5) frequency of contact or interchange among the employees; (6) geographic proximity; (7) continuity or integration of production processes; (8) common supervision and determination of labor-relations policy; (9) relationship to the administrative organization of the employer; (10) history of collective bargaining; (11) desires of the affected employees; [and] (12) extent of union organization.

*Saint Francis Coll.*, 562 F.2d at 249 (quoting Robert A. Gorman, Labor Law: Unionization and Collective Bargaining 69 (1976)).

16

contains additional employees." *Specialty Healthcare*, 357 N.L.R.B. No. 83, at \*15. FedEx offers three reasons for its conclusion. First, it contends Board precedent does not support the test; second, it claims the test violates section 9(c)(5) of the NLRA; and third, it argues the test is a rule of general application and should have been created through rulemaking, rather than through adjudication. We find none of these reasons persuasive.

**1. *The Board's Unit-Determination Precedent***

FedEx contends the *Specialty Healthcare* Board failed to provide a reasoned explanation for the "adoption" of the overwhelming-community-of interest test. Like our sister circuits, we believe FedEx "overstates the changes the Board made in *Specialty Healthcare*. . . . [T]he Board clarified—rather than overhauled—its unit-determination analysis." *Nestle Dreyer's*, 821 F.3d at 500; *see also Macy's, Inc.*, 2016 WL 3124847, at \*6 (quoting *Nestle Dreyer's*, 821 F.3d at 500); *FedEx Freight*, 816 F.3d at 525 ("We conclude that the overwhelming community of interest standard articulated in *Specialty Healthcare* is not a material departure from past precedent . . ."); *Kindred Nursing Ctrs., LLC v. NLRB*, 727 F.3d 552, 561 (6th Cir. 2013) ("The Board has used the overwhelming-community-of-interest standard before, so its adoption in *Specialty Healthcare* . . . is not new."); *Blue Man Vegas*, 529 F.3d at 421 (explaining the Board's unit-determination cases "generally conform to a consistent analytic framework" in which, to challenge a unit that is "*prima facie* appropriate"—i.e., a unit in which the employees share a community of interest—the employer must make a heightened showing that the unit is "truly

inappropriate") (internal citation and quotation marks omitted)).

As the *Specialty Healthcare* Board explained, although it has used different words to describe the heightened standard, it has long required "a showing that the included and excluded employees share an overwhelming community of interest." 357 N.L.R.B. No. 83, at *16; *see also FedEx Freight*, 816 F.3d at 523–24. For example, in *United Rentals*, 341 N.L.R.B. 540, 541 (2004), cited by the Board in *Specialty Healthcare*, the Board reversed the Regional Director's approval of the unit because "the overwhelming and undisputed evidence of overlapping duties and interchange between the excluded employees and the petitioned-for employees" demonstrated the excluded employees "share[d] . . . a substantial community of interest with the petitioned-for employees." 341 N.L.R.B. at 541–42. And in *Lanco Construction Systems, Inc.*, 339 N.L.R.B. 1048 (2003), as here, the Board considered and rejected the employer's argument that additional employees shared an "overwhelming community of interests with its solely-employed carpenters and helpers" requiring their inclusion in the unit. 339 N.L.R.B. at 1049; *see also Overnite Transp. Co.*, 322 N.L.R.B. 723, 726 (1996) (explaining that the excluded employees would "constitute a separate appropriate unit and do not share such a close community of interest . . . as would mandate their inclusion in the petitioned-for unit" (emphasis omitted)).

The *Specialty Healthcare* Board also cited the D.C. Circuit's opinion in *Blue Man Vegas*, decided three years earlier, as an accurate reflection of the Board's historic use of a heightened, overwhelming-community-of-interest standard

18

in such circumstances. 357 N.L.R.B. No. 83, at *16. Citing various Board decisions, the D.C. Circuit explained that the Board's "unit determination cases generally conform to a consistent analytic framework" in which, under the initial community-of-interest test, the Board determines whether the unit is "*prima facie* appropriate," and then, because there can be more than one appropriate bargaining unit, the person challenging the unit must show the appropriate unit is "truly inappropriate." *Blue Man Vegas*, 529 F.3d at 421 (internal quotation marks and citation omitted). The Board finds a unit is truly inappropriate, the D.C. Circuit explained, if the excluded employees "share an overwhelming community of interest with the included employees" such that there is "no legitimate basis upon which to exclude them." *Id.* The Board's citation to and approval of the D.C. Circuit's understanding of Board precedent was not an adoption of new law, but an attempt to standardize the phrasing of its "consistent analytic framework."

It is important to note, as the Fourth Circuit has, that some statements in *Specialty Healthcare* might indicate significant changes in Board policy. Of most importance, the Board seems to suggest that "whether employees are appropriately excluded from the petitioned-for unit is addressed *only* in step two, the overwhelming-community-of-interest analysis, not in step one, the traditional community-of-interest analysis." *Nestle*, 821 F.3d at 500 (emphasis in original). This would constitute a significant change. But, as noted *supra*, under the initial community-of-interest test, the *Specialty Healthcare* Board did not look "solely and in isolation, [at] the question [of] whether the employees in the unit sought have interests in common with one another." *Newton–Wellesley Hosp.*, 250 N.L.R.B. 409, 411 (1980).

Rather, it looked at similarities between the employees in the petitioned-for unit and whether their interests were sufficiently distinct from other employees. Because we find the ultimate holdings of *Specialty Healthcare*, with respect to the unit-determination standards, were not departures from Board precedent, we conclude the Board's interpretation and clarification of the NLRA was reasonable and not an abuse of discretion.

## 2. *Violation of NLRA Section 9(c)(5)*

FedEx also contends the *Specialty Healthcare* Board's overwhelming-community-of-interest test violates section 9(c)(5) of the NLRA because it ensures the union's choice is almost always the controlling factor.

Section 9(c)(5) states that "the extent to which the employees have organized shall not be controlling." 29 U.S.C. § 159(c)(5). But the extent to which employees have organized can still be considered. Although Congress "intended to overrule Board decisions where the unit determined could *only* be supported on the basis of the extent of organization," it is clear from "both the language and legislative history of § 9(c)(5) . . . that the provision was *not* intended to prohibit the Board from considering the extent [to which employees have organized] as one factor, though not the controlling factor, in its unit determination." *NLRB v. Metro. Life Ins. Co.*, 380 U.S. 438, 441–42 (1965) (emphasis added) (internal footnote omitted).

FedEx contends that under *Specialty Healthcare*, the union's initial burden to show the proposed unit is appropriate has been truncated—instead of showing the employees are similar to one another and distinct from other employees, the

20

union now only has to show the employees in the proposed unit are readily identifiable as a group. As discussed *supra*, this is not the test. The union must first show the employees comprise a readily identifiable group and share a community of interest under the traditional test. Then, following a finding of appropriateness, if a party wants to add additional employees, it must show the additional employees share an overwhelming community of interest with those in the original unit. *See Specialty Healthcare*, 357 N.L.R.B. No. 83, at *15. Therefore, we agree with the Fourth, Fifth, Sixth, Eighth, and D.C. Circuits that "so long as the overwhelming community of interest test is applied '*only after* the proposed unit has been shown to be *prima facie* appropriate, the Board does not run afoul of the statutory injunction that the extent of the union's organization not be given controlling weight.'" *FedEx Freight*, 816 F.3d at 525 (emphasis in original) (quoting *Kindred Nursing*, 727 F.3d at 565); *see also Blue Man Vegas*, 529 F.3d at 423.

In accordance with the Fourth Circuit's recent interpretation of its own precedent in *Nestle Dreyer's*, the Fourth Circuit's reasoning in *NLRB v. Lundy*, 68 F.3d 1577 (4th Cir. 1995), does not persuade us otherwise. In *Lundy*, the Board presumed the union-proposed unit was appropriate, and then applied an overwhelming community-of-interest standard. In other words, the Board never determined whether the unit was appropriate under the traditional community-of-interest test, but assumed it was and skipped to the question of whether there was an overwhelming community of interest between the employees. The Fourth Circuit found this method effectively excluded employees suggested by the employer in violation of section 9(c)(5). *Lundy*, 68 F.3d at 1581.

21

The facts of *Lundy* distinguish it from *Specialty Healthcare*. As the Fourth Circuit recently explained in *Nestle Dreyer's:*

> *Lundy* does not establish that the overwhelming-community-of-interest test as later applied in *Specialty Healthcare* fails to comport with the NLRA. Instead, *Lundy* prohibits the overwhelming-community-of-interest test where the Board first conducts a deficient community-of-interest analysis . . . . But in *Lundy* we had no occasion to determine whether the overwhelming-community-of-interest test would offend the NLRA in a case where the Board properly conducts *Specialty Healthcare*'s step-one analysis by determining that the members of the petitioned-for unit share a distinct community of interest. With such a case now before us, we find *Lundy* distinguishable.

*Nestle Dreyer's*, 821 F.3d at 499. Each circuit court to hear this issue has found likewise.[10]

---

[10] *See Macy's, Inc.*, 2016 WL 3124847, at *7 ("Where the Board 'rigorously weigh[s] the traditional community-of-interest factors to ensure that the proposed unit was proper under the NLRA . . . the overwhelming community of interest' [test] does not conflict with the Act. . . . That is precisely what the Board did in the instant case. As a result, the test and its application do not violate Section 9(c)." (quoting *Nestle Dreyer's*, 821 F.3d at 499)); *FedEx Freight*, 816 F.3d at 525–26 ("The *Lundy* court did not hold that any heightened standard violates section 9(c)(5) . . . . We agree with the D.C. Circuit that the use of an overwhelming community of interest test at the second step of the Board's

Finally, FedEx contends that even if the overwhelming-community-of-interest standard is not a *de jure* violation of section 9(c)(5), recent Board decisions suggest the test creates such an impossible standard for employers to meet that as applied, it will always privilege the employees' proposed unit.[11] This privileging occurs, FedEx argues, because the Board promotes the departmental or administrative form over all commonly shared factors, making the appropriateness of the unit a foregone conclusion in almost all circumstances.

---

analysis does not violate section 9(c)(5) because the Board 'did not presume the union's proposed unit was valid, as it had done in *Lundy*.'" (quoting *Blue Man Vegas*, 529 F.3d at 423)); *Kindred Nursing*, 727 F.3d at 564–65 ("[T]he Board did not [violate section 9(c)(5) by] assum[ing] that the CNA-only unit was appropriate. Instead, it applied the community-of-interest test . . . to find that there were substantial factors establishing that the CNAs shared a community of interest and therefore constituted an appropriate unit. . . . Nor does the overwhelming-community-of-interest test violate section 9(c)(5) . . . 'as long as the Board applies the overwhelming community of interest standard *only after* the proposed unit has been shown to be *prima facie* appropriate . . . .'" (internal formatting omitted) (emphasis in original) (quoting *Blue Man Vegas*, 529 F.3d at 423)).

[11] Some of the cases cited by FedEx include: *DPI Secuprint, Inc.*, 362 N.L.R.B. No. 172, 2015 WL 5001021 (2015); *Guide Dogs for the Blind, Inc.*, 359 N.L.R.B. No. 151, 2013 WL 3365658 (2013); *Fraser Eng'g*, 359 N.L.R.B. No. 80, 2013 WL 1181583 (2013); and *DTG Operations, Inc.*, 357 N.L.R.B. No. 175, 2011 WL 7052275 (2011).

This argument is unconvincing. Even if the Board has approved more units organized along departmental lines—lines often created by the employer—it does not follow that the Board privileges the unit determinations of the employees, and FedEx has not shown otherwise. Moreover, the Board has been clear that it will not approve "fractured" units or arbitrary segments of employees. *See Odwalla, Inc.*, 357 N.L.R.B. No. 132, at *5 (2011) (using the overwhelming-community-of-interest test to find additional employees should be included in the otherwise appropriate unit because the recommended unit was a fractured unit—an "arbitrary segment" with no rational basis); *see also Neiman Marcus Grp., Inc.*, 361 N.L.R.B. No. 11, 2014 WL 3724884, at *4 (2014) (finding there was no community of interest because "[t]he boundaries of the petitioned-for unit [did] not resemble any administrative or operational lines drawn by the Employer," but not reaching the overwhelming-community-of-interest test).

Accordingly, we conclude the overwhelming-community-of-interest test clarified in *Specialty Healthcare* does not conflict with section 9(c)(5).[12]

---

[12] FedEx also argues the *Specialty Healthcare* Board improperly imported the overwhelming-community-of-interest test from accretion cases, in which "new employees are added to an existing bargaining unit *without* a representation election; therefore, the showing of shared characteristics must be higher to protect employee interests." *Lundy*, 68 F.3d at 1581 (emphasis in original). This argument is not persuasive. Although the "overwhelming-community-of-interest" language from the *Specialty Healthcare* test is the same language used in accretion cases, the frameworks of the

### 3. *Rulemaking Versus Adjudication*

Finally, FedEx contends *Specialty Healthcare* was wrongly decided because the overwhelming-community-of-interest test was a new policy and should have been promulgated through rulemaking rather than adjudication.

We recognize that "the choice made between proceeding by general rule or by individual, ad hoc litigation is one that lies primarily in the informed discretion of the administrative agency." *SEC v. Chenery Corp.*, 332 U.S. 194, 203 (1947).[13] But as previously explained, the overwhelming-community-of-interest test described in *Specialty Healthcare* was not new policy, but a consolidation and clarification of the heightened standard used by the Board in prior similar situations. Therefore, we need not address whether the Board abused its sound discretion in this regard.

---

tests are different. Unlike in accretion cases, in unit-determination cases like *Specialty Healthcare* and this case, the Board applies the "overwhelming-community-of-interest" test only after conducting an initial community-of-interest analysis and finding the employee-proposed unit appropriate.

[13] Moreover, the Board, "uniquely among major federal administrative agencies, has chosen to promulgate virtually all the legal rules in its field through adjudication rather than [through] rulemaking." *Allentown,* 522 U.S. at 374; *see also* Charlotte Garden, Toward Politically Stable NLRB Lawmaking: Rulemaking vs. Adjudication, 64 Emory L.J. 1469, 1471 (2015) (explaining the Board generally creates policies through adjudication rather than through rulemaking).

## IV.

Having found the Board's clarification of the unit-determination standard in *Specialty Healthcare* reasonable, we consider whether the Board properly applied this two-step framework here.

In this case, the Regional Director, as confirmed by the Board, found (1) the petitioned-for unit of FedEx drivers was an appropriate unit under the initial community-of-interest test; and (2) the dockworkers did not share an overwhelming community of interest with the drivers such that they must be included in the unit.

To reiterate, under the initial community-of-interest test, the Board weighs a variety of factors—selected based on their relevance to the unit at hand—to determine whether the employees in the petitioned-for unit share a community of interest. These factors may include whether the employees in the unit are "organized into a separate department; have distinct skills and training; have distinct job functions and perform distinct work[;] . . . are functionally integrated with the Employer's other employees; . . . have distinct terms and conditions of employment; and are separately supervised." *United Operations*, 338 N.L.R.B., at *1. Applying this test, the Regional Director first looked at whether the union had shown the petitioned-for unit comprised a "clearly identifiable group"—i.e., whether the employees in the unit were internally similar or made up a fractured unit—and then at whether this group shared a community of interest. He found the group was "clearly identifiable because . . . 'it track[ed] a dividing line drawn by the Employer.'" J.A. 12

(citing *Macy's Inc.*, 361 N.L.R.B. No. 4, 2014 WL 3613065, at *12 (2014)). Specifically, "[t]he petitioned-for unit [was] structured along the lines of classification, job function, and skills," and although the dockworkers and drivers were not in separate departments, "there [was] no question that the Employer treat[ed] the driver classification differently in almost every operational and administrative sense." *Id.* The Regional Director also found the drivers distinguishable from the dockworkers because of their uniform requirements, commercial driver's license requirements, and driver-specific job descriptions. *Id.*

For many of the same reasons, the Regional Director found the drivers in the petitioned-for unit shared a community of interest. They "engaged in virtually the same task—moving freight from place to place," were "distinctly qualified and skilled because of their licensure requirements, and use[d] the same type of equipment." *Id.* at 13. Moreover, all drivers were full-time employees with the same benefits and similar compensation, experienced similar working conditions, were subjected to random drug testing, and applied for shifts based on seniority.

We find the Regional Director's application of the initial community-of-interest test (which was adopted by the Board) was not an abuse of discretion. He weighed relevant factors to determine whether the union had shown the petitioned-for unit was an appropriate unit—looking not only at whether the employees in the petitioned-for unit were similar and comprised a readily identifiable group, but also at whether these employees were sufficiently distinct from other employees.

The Regional Director also properly applied the overwhelming-community-of-interest analysis. Under this test, the burden switched to FedEx to show that an otherwise appropriate unit of drivers was inappropriate because dockworkers shared an overwhelming community of interest with them. The Regional Director agreed with the union, finding sufficient distinctions between the employees. He noted that dockworkers have no prerequisites for employment, whereas drivers must have a Class A commercial driver's license with various certifications, and that, unlike dockworkers, drivers are subject to random drug testing because of the nature of their work. The Regional Director also noted the disparity in wages between dockworkers (including part-time dockworkers) and drivers, and the distinct work locations of the employees—dockworkers "work almost exclusively within the Terminal," while drivers work outside the terminal. J.A. 13. He also observed that dockworkers and drivers do not frequently interact with one another, and that there is only a one-way interchange between positions—from dockworker to driver through the dock-to-driver program.

The Regional Director did recognize "a few areas of commonality between the three classifications, chiefly in common supervision," but he concluded that "these areas [fell] far short of establishing the overwhelming community of interest between the Dockworkers and the employees in the petitioned-for unit that would be necessary to require the Dockworkers' inclusion." *Id.*

Given the Board's discretion to find an appropriate unit—not necessarily the most appropriate unit—and our deferential standard of review, we hold the Board's conclusion that there was no overwhelming community of

28

interest was not an abuse of discretion.

## V.

For the foregoing reasons, we will deny FedEx's petition for review and grant the Board's cross-petition for enforcement of its order.

JORDAN, *Circuit Judge*, concurring in part and concurring in the judgment:

We have routinely held that a single passing reference to an issue in a footnote, without squarely arguing it, is insufficient to preserve that issue for our review on appeal. *See, e.g.*, *Prometheus Radio Project v. FCC*, 2016 WL 3003675, at *15 (3d Cir. May 25, 2016); *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) (Alito, J.). Our sister circuits also decline to consider issues raised in such perfunctory fashion.[1] There is good reason for this unanimous position. Brief, casual references to arguments do not put the opposing party on adequate

---

[1] "Federal courts of appeals refuse to take cognizance of arguments that are made in passing without proper development." *Johnson v. Williams*, 133 S. Ct. 1088, 1095 (2013); *see also Therrien v. Target Corp.*, 617 F.3d 1242, 1253 (10th Cir. 2010); *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1283 (11th Cir. 2009); *Minneapolis Taxi Owners Coal., Inc. v. City of Minneapolis*, 572 F.3d 502, 506 n.2 (8th Cir. 2009); *United States v. Strong*, 489 F.3d 1055, 1060 n.4 (9th Cir. 2007); *City of Syracuse v. Onondaga Cty.*, 464 F.3d 297, 308 (2d Cir. 2006); *Smithkline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006); *United States v. Dairy Farmers of Am., Inc.*, 426 F.3d 850, 856 (6th Cir. 2005); *IGEN Int'l, Inc. v. Roche Diagnostics GmbH*, 335 F.3d 303, 309 n.3 (4th Cir. 2003); *Sugarcane Growers Coop. of Fla. v. Veneman*, 289 F.3d 89, 93 n.3 (D.C. Cir. 2002); *Beazley v. Johnson*, 242 F.3d 248, 270 (5th Cir. 2001); *Nat'l Foreign Trade Council v. Natsios*, 181 F.3d 38, 60 n.17 (1st Cir. 1999); *Bakalis v. Golembeski*, 35 F.3d 318, 326 n.8 (7th Cir. 1994).

notice of the issue, nor do they develop it sufficiently to aid our review. That is particularly true "where important and complex issues of law are presented, [so] a far more detailed exposition of [an] argument is required to preserve an issue" in that context. *Frank v. Colt Indus., Inc.*, 910 F.2d 90, 100 (3d Cir. 1990). Despite this well-recognized rule, my colleagues in the Majority conclude that a one-sentence statement incorporating a two-sentence footnote – which itself only incorporates the views briefly expressed in a dissenting opinion – is adequate to preserve FedEx's arguments before the NLRB. Were such a tenuous "argument" made before this Court, we would never consider it. *See United States v. Joseph*, 730 F.3d 336, 341 (3d Cir. 2013) ("[R]aising an *issue* in the District Court is insufficient to preserve for appeal *all arguments* bearing on that issue" (emphasis added).). No reason has been suggested why the rule for raising arguments before the NLRB should be more relaxed than the rule that applies in this and every other court of appeals, and, as explained later, there is good reason to believe that the rule for arguments to the NLRB should be even more rigorous. I therefore respectfully disagree with Part II of the Majority opinion, and would conclude that FedEx's arguments challenging the standard set forth in *Specialty Healthcare & Rehabilitation Center*, 357 NLRB 934 (2011), *see infra* note 5, were inadequately raised to the Board, leaving us without jurisdiction to consider them, pursuant to 29 U.S.C. § 160(e).[2]

---

[2] Because I regard FedEx's challenge to the *Specialty Healthcare* standard as waived, I would only review whether the Board properly applied that standard. As to that question, I join Part IV of the Majority's opinion – I agree that the Regional Director's application of *Specialty Healthcare* in

2

As the Majority correctly recognizes, when we consider petitions from NLRB decisions, our jurisdiction is limited by statute only to a review of issues raised before the Board. "No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances."[3]

---

this case (which was adopted by the Board) was a proper exercise of its discretion. I therefore also concur in the judgment denying the petition for review and granting the petition for enforcement.

[3] FedEx has not alleged that any "extraordinary circumstances" are present in this case to excuse its failure to make its arguments before the Board. And even if it had,

> [a] review of the cases shows that the "extraordinary circumstances" provision of Section 10(e) (29 U.S.C. § 160(e)) (excusing the losing party's failure to make objections to the Board) has been applied only in rare cases, as when a snow storm closes the Board's offices, or when a telephone and taxi strike prevent delivery of the objections, or when an unusually early mail pickup delays delivery.

*NLRB v. STR, Inc.*, 549 F.2d 641, 642 (9th Cir. 1977) (per curiam) (citations omitted); *see also 1621 Route 22 West Operating Co., LLC v. NLRB*, Nos. 15-2466 & 15-2586, 2016 WL 3146014, at *7 (3d Cir. June 6, 2016) (noting that a misapplication of the National Labor Relations Act by the Board does not constitute an "extraordinary circumstance");

29 U.S.C. § 160(e);[4] *see Woelke & Romero Framing, Inc. v. NLRB*, 456 U.S. 645, 666 (1982) ("[T]he Court of Appeals lacks jurisdiction to review objections that were not urged before the Board … ."). "The Supreme Court has construed this rule strictly," *NLRB v. Konig*, 79 F.3d 354, 359 (3d Cir. 1996), and we have likewise "shown unusual unanimity in labor cases in strictly adhering to the requirement," *NLRB v. Wolff & Munier, Inc.*, 747 F.2d 156, 166 (3d Cir. 1984) (Sloviter, J., dissenting). "[T]o effectively preserve an issue, the respondent's exception must apprise the Board of the issue that the responding party intends to press on review sufficiently enough that the Board may consider the exception on the merits." *Cast North America (Trucking) Ltd. v. NLRB*, 207 F.3d 994, 1000 (7th Cir. 2000) (internal quotation marks omitted). The Board's rules similarly require parties to "set forth specifically the questions of procedure, fact, law, or policy to which exception is taken," "concisely state the grounds for the exception," and "specifically urge[]" any

---

*Advanced Disposal Servs. East, Inc. v. NLRB*, 820 F.3d 592, 600 (3d Cir. 2016) (holding that "a challenge which goes to the composition of the NLRB, and thus implicates its authority to act, constitutes an 'extraordinary circumstance' under § 160(e)").

[4] Although our jurisdiction in this case arises under both 29 U.S.C. §§ 160(e) and (f), as the parties petitioned for both review and enforcement of the underlying order, the requirement that an issue be presented to the Board for us to have jurisdiction "applies to both enforcement and review proceedings." *Oldwick Materials, Inc. v. NLRB*, 732 F.2d 339, 341 (3d Cir. 1984).

exception, or risk having the argument "be deemed to have been waived." 29 C.F.R. § 102.46(b).

Because the preservation requirement of § 160(e) goes to our jurisdiction, its application is "mandatory, not discretionary." *Oldwick Materials, Inc. v. NLRB*, 732 F.2d 339, 341 (3d Cir. 1984). "Th[at] rule serves a sound purpose … [and] we are bound by it." *Detroit Edison Co. v. NLRB*, 440 U.S. 301, 311 n.10 (1979). The jurisdictional bar is "designed to allow the NLRB the first opportunity to consider objections and to ensure that reviewing courts receive the full benefit of the NLRB's expertise." *Cast North America*, 207 F.3d at 1000.

Here, FedEx provided two submissions to the Board. First, the company sought review of the regional director's decision in the underlying representation proceeding. In that submission, it generally argued that the regional director had misapplied the *Specialty Healthcare* standard – laying out an extensive factual argument about the integrated work of dockworkers and drivers – with, in the following footnote, only one brief reference to a possible legal challenge to the overall standard:

> The Employer posits that *Specialty Healthcare* was decided erroneously, largely for the reasons cited in Member Hayes'[s] dissent therein. However, on the assumption that [the] Board will not now revisit its decision there, the Employer alternatively contends that the case at bar was decided incorrectly even under the rule of *Specialty Healthcare* and its progeny.

(JA at 183 n.4.) In the remaining twenty-three pages of its brief, FedEx made no other objection to the *Specialty Healthcare* standard, arguing only its proper application. It also stated at the end of its brief that "[t]he Board has made clear that the decision in *Specialty Healthcare* did not create a new community of interest test." (JA at 204.) And it said that without comment or quarrel. FedEx's first submission to the Board is also notable for never actually applying any standard but the one from *Specialty Healthcare*. The omission of any effort to apply the more "traditional" analysis is telling[5] – if

---

[5] As explained in the Majority opinion, *Specialty Healthcare* set out the "overwhelming community of interests" test, in which an employer seeking to expand a petitioned-for unit composed of a readily identifiable group that shares a community of interest must demonstrate that the employees it seeks to add "share an *overwhelming* community of interest with those in the petitioned-for unit." *Specialty Healthcare*, 357 NLRB 934, 946 (2011) (emphasis added). In dissent, Member Hayes noted that, "in a correct application of the traditional community of interest test, the Board never addresses, solely and in isolation, the question whether the employees in the unit sought have interests in common with one another." *Id.* at 951 (internal quotation marks omitted). In other words, the *Specialty Healthcare* test starts by looking exclusively at the commonalities of the petitioned-for unit, whereas the "traditional" analysis contrasts the employees in that unit with other employees to determine "whether the interests of the group sought are *sufficiently distinct* from those of other employees to warrant the establishment of a separate unit." *Id.* (internal quotation marks omitted). In Member Hayes's view, "[t]he 'overwhelming community of interest' test [the Board

FedEx really was arguing that the Board should apply the traditional analysis, it should have done so itself.

Thereafter, FedEx filed its second submission to the Board in response to a notice to show cause in the subsequent unfair labor practice proceeding. With no specificity, it incorporated its previous submission by reference, saying simply, "[t]he Employer continues to rely upon the reasons and legal arguments set forth in the Employer's Request For Review as the basis for its refusal to recognize the Union." (JA at 217.) In the balance of its argument, FedEx again challenged only the proper application of the *Specialty Healthcare* standard.

Now, however, FedEx has made the strategic decision to change its argument into a direct challenge of that standard. If it had persevered in challenging only the proper application of *Specialty Healthcare*, principles of deference that bind us would have placed it in a difficult position. FedEx would have had "to show that the Board abused its discretion in determining the appropriateness of the bargaining unit in question." *Presbyterian Univ. Hosp. v. NLRB*, 88 F.3d 1300, 1303 (3d Cir. 1996) (internal quotation marks omitted). That would have been an "uphill battle." *Id.* Likely recognizing as much, the company chose a different fight. So, in its opening brief before us, FedEx made no argument whatsoever about the proper application of the *Specialty Healthcare* standard. None. Instead, it dedicated the entire twenty-five pages of argument to a legal challenge to the existence of the *Specialty*

---

majority] endorse[d] cannot be reconciled with the traditional appropriate unit test." *Id.*

7

*Healthcare* standard, laying out the arguments that the Majority addresses in Part III of its opinion.

Perhaps it is not coincidental that we "exercise plenary review over questions of law and the Board's application of legal precepts." *NLRB v. Attleboro Assocs., Ltd.*, 176 F.3d 154, 160 (3d Cir. 1999). We have previously held that a party cannot turn factual arguments raised before the Board into legal arguments before our Court, which is exactly what FedEx has done here. *See NLRB v. FES, a Div. of Thermo Power*, 301 F.3d 83, 89 (3d Cir. 2002) (holding that because "[t]he tenor of [the employer's] challenge before the Board raised a purely factual question," a related legal challenge was jurisdictionally barred). But, curiously, the Majority is satisfied with that shape shifting. By my colleagues' reckoning, FedEx legitimately changed its argument from one that would have required strict deference to the Board into one that permitted plenary review of the Board's legal conclusions. Although FedEx has lost its challenge to the applicable standard – and, as I note at the end of this discussion, *see infra* note 12, I too question the legitimacy of the standard – we should not be entertaining the challenge at all.

FedEx says that its footnote was sufficient to preserve for our review its attack on *Specialty Healthcare* because

> the General Counsel has suffered no prejudice from FedEx Freight's purported failure to raise the *Specialty Healthcare* issue during the unfair labor practice proceeding, unless of course the General Counsel is contending that the Board might have overturned *Specialty Healthcare*

8

had FedEx Freight decided to pursue its argument more vigorously. That, however, was simply not going to happen.

(Reply Br. at 5-6.) Its attorney echoed that point at oral argument: "It would have been fruitless for us to argue this below. The Board was going to do what it was going to do." Oral Argument at 05:30, *available at* http://www2.ca3. uscourts.gov/oralargument/audio/15-2585NLRBv.FEDEX FreightINC.mp3 (argued March 1, 2016). The Majority agrees, saying that "it is not surprising that FedEx did not pursue its challenge to *Specialty Healthcare* more vigorously in its request for review before the Board" because the Board had already "refused to reconsider its holding in *Specialty Healthcare*." (Majority Op. at 11.) But there is an obvious difference between a strategic lack of vigor and the outright omission of an argument. FedEx is, of course, free to make strategic decisions about which arguments to emphasize and which to discuss only briefly, but it must at least *make* an argument to the Board for us to have jurisdiction to review it. *Cf. MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 125 (2007) (holding that a "futile" argument to overrule a circuit precedent was preserved for further consideration when the argument was limited only "to a *few pages* of [an] appellate brief" (emphasis added)). That FedEx likely would not have prevailed before the Board in challenging *Specialty Healthcare* is irrelevant. The jurisdictional bar of § 160(e) does not vary based upon the likelihood of success of the waived argument. Indeed, the Supreme Court has already rejected the idea that a party can avoid waiver if it had "no practical reason" to raise a particular argument before the Board. *Detroit Edison*, 440 U.S. at 311 n.10 ("If this ground were accepted as an 'extraordinary circumstance' … little

9

would be left of the statutory exception."). Section 160(e) is straightforward: If an issue is not adequately raised before the Board, we may not consider it.

The Majority says that "FedEx's footnote in its petition for review provided sufficient notice" because it gave "as the basis for its challenge the reasons cited in Member [Brian] Hayes'[s] dissent" in *Specialty Healthcare*. (Majority Op. at 9 (alteration in original) (internal quotation marks omitted).) I cannot agree. For starters, FedEx's footnote is not even phrased as an argument that the Board *should* overrule *Specialty Healthcare*; it simply "posits" the company's disagreement with *Specialty Healthcare* for "largely" the reasons in Hayes's dissent. (JA at 183 n.4.) Which reasons? The footnote does not specify, opting instead to merely reference Member Hayes's dissent and leaving it to the reader to guess which reasons FedEx likes.[6] But my larger concern is that such wholesale incorporation of

_____

[6] Notably, the Majority does not examine the dissenting opinion from *Specialty Healthcare* that FedEx purported to incorporate by reference in its first submission to the NLRB, which is odd since that is the only place any legal arguments against the *Specialty Healthcare* standard were raised at all. And, when parsed in detail, Member Hayes's dissent actually makes few references to the three legal arguments that FedEx now advances before us. Hayes, however, certainly did criticize the Board majority's adoption of the "overwhelming community of interest test," saying that it had "fundamentally change[d] the standard for determining whether a petitioned-for unit is appropriate in any industry subject to the Board's jurisdiction." *Specialty Healthcare*, 357 NLRB at 948.

10

arguments embodied elsewhere – without any elaboration of those issues directly to the Board – simply cannot be adequate to satisfy § 160(e). Were it otherwise, parties before the Board would be free to repeatedly drop such footnotes and incorporate by reference any argument that could conceivably (if tangentially) be related to the proceeding in question. That would effectively nullify any word or page limits that apply to Board proceedings and needlessly complicate the task of the NLRB and its members. Indeed, there would be no practical limit to the ability of parties to incorporate a variety of arguments, from a variety of sources, entirely by reference in their submissions to the Board. For similar reasons, courts of appeals do not permit parties to incorporate their district court submissions by reference. *See, e.g.*, *Gaines-Tabb v. ICI Explosives, USA, Inc.*, 160 F.3d 613, 624 (10th Cir. 1998) (emphasizing that "[a]llowing litigants to adopt district court filings would provide an effective means of circumventing the page limitations on briefs," and collecting cases to that effect).

In my estimation, this case is akin to *Marshall Field & Co. v. NLRB*, in which the Supreme Court held that an objection to the Board that the agency had erred "in making each and every recommendation" was insufficient to grant jurisdiction for judicial review of a more particularized challenge. 318 U.S. 253, 255 (1943) (per curiam). A "general objection" presented to the Board is insufficient to preserve more specific, subsidiary issues later brought to court, as it "d[oes] not apprise the Board that [the party] intend[s] to press the question now presented, and may well account for the Board's failure to consider th[e] question in its decision and to make findings with respect to it." *Id.* Like the objection in *Marshall Field*, FedEx's footnoted aside was

11

far too general to pass this test. FedEx offered no specific basis for its disagreement with *Specialty Healthcare*. *See Pub. Serv. Co. of N.M. v. NLRB*, 692 F.3d 1068, 1073 (10th Cir. 2012) ("To determine whether § 160(e)'s 'objection' requirement is satisfied, we ask this question: was the matter the petitioner seeks to raise here pressed before the Board with 'sufficient specificity and clarity' so the tribunal was aware it needed to be addressed and could become the subject of litigation in this court?" (citation omitted)). In fact, it qualified what little it did say, with the hedge that it "largely" agreed with the *Specialty Healthcare* dissent. The jurisdictional bar of § 160(e) forecloses our review of any such vague argument-by-reference.[7]

The Majority hangs much of its contrary conclusion on the existence of Member Johnson's concurrence in FedEx's

---

[7] I do agree with the Majority's conclusion that FedEx's second submission was sufficient to incorporate the arguments of its first. Because the NLRB has a fairly strict "no relitigation" rule (*see* Majority Op. at 7-8), parties to a follow-on unfair labor practice proceeding in these circumstances may incorporate by reference their earlier submission to the Board in the representation proceeding. The issue in this case, however, is not the adequacy of FedEx's incorporation by reference in its *second* submission. The problem, rather, is that the *first* submission's footnote was inadequate to bring FedEx's arguments against the *Specialty Healthcare* standard before the Board. I would not view the issue as waived if FedEx had made a fully-developed argument in the representation proceeding and then incorporated that argument by reference in the unfair labor practice proceeding. But that is not what happened here.

representation proceeding. He declined to apply the *Specialty Healthcare* test for approving a bargaining unit and instead found the unit appropriate under the "traditional" approach. As a consequence, Johnson found "no need to express a view whether the Board correctly decided *Specialty Healthcare* … and whether the Regional Director correctly applied it here." (JA at 4 n.1.) To my colleagues in the Majority, "Johnson's concurrence … indicates [that FedEx's] footnote provided sufficient notice of [its] *Specialty Healthcare* challenge." (Majority Op. at 10.)

I disagree. For one, the concurrence in question reflected the position of only a single member and not the entire Board. The Board opinion stated that FedEx's challenge "raise[d] no substantial issues warranting review." (JA at 4.) Had the Board perceived that FedEx was mounting a challenge to the applicable standard, that certainly would count as a "substantial issue." Also, and more importantly, the Supreme Court has held that the jurisdictional bar of § 160(e) "applies even though the Board" has addressed and decided an issue. *Woelke & Romero Framing, Inc.*, 456 U.S. at 666 (holding that even where the Board raises an issue *sua sponte*, the aggrieved party must seek reconsideration to the Board before seeking judicial review); *see also Int'l Ladies' Garment Workers' Union v. Quality Mfg. Co.*, 420 U.S. 276, 281 n. 3 (1975) (imposing the same requirement); *Alwin Mfg. Co. v. NLRB*, 192 F.3d 133, 143 (D.C. Cir. 1999) ("The Supreme Court has indicated that section [160(e)][8] bars

---

[8] In many cases, courts have referred to § 160(e) as "§ 10(e)," which is its section number in the National Labor Relations Act. I have changed any such section numbers in quotations throughout this concurrence to "§ 160(e)" for the

13

review of any issue not presented to the Board, even where the Board has discussed and decided the issue."). "[T]he statute requires objection to the Board, and not discussion by the Board, before an issue may be presented in court." *Local 900, Int'l Union of Elec., Radio & Mach. Workers v. NLRB*, 727 F.2d 1184, 1191 (D.C. Cir. 1984).[9] In the past, "[c]ases interpreting section [160(e)] look[ed] to whether a party's exceptions are sufficiently specific to apprise the Board that an issue might be pursued on appeal." *Consol. Freightways v. NLRB*, 669 F.2d 790, 793 (D.C. Cir. 1981). Accordingly, we should look only to the adequacy of the objection brought to the Board, not the content of the Board's opinion (or, as here, a one-member concurrence), to decide whether we have jurisdiction under § 160(e). "[T]he fact that the Board has or

---

sake of consistency, but the two sections are one and the same.

[9] In an analogous context, the D.C. Circuit recently declined to address an argument that a party had not made before the NLRB. *See HealthBridge Mgmt., LLC v. NLRB*, 798 F.3d 1059, 1069 (D.C. Cir. 2015). The court acknowledged that a "dissenting member [had] explicitly" addressed the argument that the party was advancing, but concluded that "even if this gave the [Board] majority notice the [rule] itself was at issue, it [was] insufficient to invoke our jurisdiction." *Id.* The D.C. Circuit rightly recognized that the jurisdictional bar turns on whether an issue is adequately presented to the Board by the parties, not on whether the Board (or any of its members) has discussed the issue in an opinion. The aggrieved party had simply "failed to put this issue before the Board," so the court "lack[ed] jurisdiction over th[at] aspect of its petition." *Id.*

has not discussed an issue raises no necessary inferences with respect to section [160(e)]." *Local 900*, 727 F.2d at 1192.[10]

The Majority also points out "the Board's acute awareness of recent and active challenges to *Specialty*

---

[10] Were that not enough, the circumstances of this case make Johnson's concurrence particularly insignificant to any assessment of the adequacy of FedEx's submissions to the Board. It appears that, around the time of the Board's decision in this case, certain members of the Board (particularly then-Members Hayes and Johnson) applied the more traditional analysis in every case involving the *Specialty Healthcare* standard. *See, e.g.*, *Odwalla, Inc.*, 357 NLRB 1608, 1611 (2011) (Hayes concurring under traditional analysis). In other words, Johnson wrote this same concurrence regularly. So the Majority cannot say that FedEx's two-sentence footnote was what put this issue on Johnson's radar, as his concurrence was a *pro forma* opinion that he used in each case that applied *Specialty Healthcare*, even, as here, when he agreed with the ultimate outcome. In all, it appears he wrote at least twenty-five such footnoted concurrences in the period from when *Specialty Healthcare* was decided until August 20, 2015, when he ultimately dissented and expressed his disagreement with that standard. *See DPI Secuprint, Inc.*, 362 NLRB No. 172, at *9 (2015). The mere fact that he included a footnoted concurrence in this case – a concurrence that had been replicated (often almost verbatim) in every other case that called for application of *Specialty Healthcare* – does not suggest that it was FedEx's buried footnote that brought the issue to anyone's attention on the Board. Quite the contrary: Member Johnson would have included that concurrence regardless.

*Healthcare*" in other cases, making it "impossible" that it was not on notice of FedEx's challenge to the standard. (Majority Op. at 10-11.) Perhaps the Majority is suggesting that FedEx did not even need to include its footnote to preserve the issue for our review – that it was enough that there was an ongoing debate in the ether. But that very loose approach is not what § 160(e) allows. The statute requires that an argument be adequately presented to the Board, and that principle does not vary depending upon what issue is involved, even if the issue is otherwise well known. "Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice." *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952). Section 160(e) places an obligation solely on the parties, and they must meet that obligation before we can exercise jurisdiction over their claims, regardless of any ongoing debates within the Board. The statute means what it says, and we are not free to relax its jurisdictional requirement just because the particular unpreserved issue happens to be especially timely or of interest to particular Board members. Section 160(e) applies uniformly to all issues and to all parties.

Real damage is done by permitting the kind of sandbagging that FedEx has gotten away with here. Despite the strictures of § 160(e), the Board will now have to be concerned about addressing barely mentioned legal issues. And, by our blessing as legitimate argument FedEx's "I incorporate what I incorporated when I said I largely agreed with a dissent" statement, we only encourage such improper

16

practice in future cases.  This is particularly troubling because it may be said to broaden the scope of our own appellate review.  After all, why should the requirements for issue preservation be any different for practice before the Board than before us?[11]  I cannot think of a good reason.  But, if there were, an argument could be made that the rules should be stricter before the Board.  Section 160(e) imposes a non-waivable statutory bar on further review, grounded in jurisdiction rather than discretion, whereas waiver in our Court is a prudential doctrine to which we may choose to make exceptions.  *Compare Advanced Disposal Servs. East, Inc. v. NLRB*, 820 F.3d 592, 598 (3d Cir. 2016), *with Wright v. Corning*, 679 F.3d 101, 105 (3d Cir. 2012).  Rigid adherence to § 160(e) is also important because "[t]his statutory provision affords the Board the opportunity to bring

---

[11] The Fourth Circuit, for example, applies a similar rule for preservation of arguments before the Board as it applies for preservation of arguments before it – "the objection process would have no worth" if "a passing reference [were] sufficient to preserve an objection." *Elizabethtown Gas Co. v. NLRB*, 212 F.3d 257, 265 (4th Cir. 2000).  A claim of error to that court must be "grounded in an appropriately specific objection" that was also raised before the Board.  *Id*.  In our Circuit, however, it will apparently be the NLRB's job to ferret out, and fully consider, any possible argument that might be buried in a corner of a brief.  And if that rule applies to the Board, one might assume that it would also apply to us.  If so, parties are now free to drop footnotes that incorporate by reference arguments found somewhere else entirely – perhaps in court opinions, law review articles, or law blogs – and we should be willing to consider them.  That has never been our job before, but it may be now.

its labor relations expertise to bear on the problem so that we may have the benefit of its opinion when we review its determinations." *NLRB v. Allied Prods. Corp.*, 548 F.2d 644, 653 (6th Cir. 1977). Our application of § 160(e) should therefore strongly encourage parties to make full arguments to the Board in the first instance. That, unfortunately, is not the incentive provided by today's Majority opinion.[12]

For the foregoing reasons, I regard FedEx's challenge to the *Specialty Healthcare* standard as waived. I would thus proceed directly to the application of that standard, as does the Majority in Part IV of its opinion. I concur in that part of the Majority's opinion, and therefore concur in the judgment.

---

[12] Were FedEx's challenge to *Specialty Healthcare* properly before us, I would agree with the Majority's understated observation "that some statements in *Specialty Healthcare* might indicate significant changes in Board policy." (Majority Op. at 19.) In light of those changes, I have serious misgivings about the Board's choice to adopt that standard in an adjudicative proceeding rather than by rulemaking. I am also concerned that the changed standard seems to put a thumb on the scale in favor of the union's choice of unit, thus perhaps running afoul of NLRA § 9(c)(5), codified at 29 U.S.C. § 159(c)(5), and encouraging the fragmentation of bargaining units. But, interesting as those issues are, they do not give us license to issue an advisory opinion about arguments outside of our jurisdiction. As FedEx did before the Board, I will content myself by noting that my concerns are largely those expressed in Member Hayes's dissent.